[Civ. No. 3360. Fifth Dist. Mar. 29, 1979.]

In re the Marriage of LESLIE and SHIMSHON BEN-YEHOSHUA.
LESLIE BEN-YEHOSHUA, Respondent, v.
SHIMSHON BEN-YEHOSHUA, Appellant.

**COUNSEL**

Low, Stone & Wolfe, Linda L. Nathan, Herbert N. Wolfe and Jerome Smith for Appellant.

Clawson, Timm & Atkinson and Lorence L. Timm for Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Shimshon Ben-Yehoshua, husband, appeals from an interlocutory decree of dissolution awarding custody of his three children to his wife, Leslie Ben-Yehoshua, and ordering him to pay child support, attorney's fees and costs and also dividing certain property located in Israel. We shall reverse that part of the judgment awarding custody of the children and awarding child support and affirm the balance.

Wife is a United States citizen. Husband is a citizen of Israel. They were married in Israel on April 10, 1962. Three children were born of the marriage: Eyal, born August 15, 1964, Liat, born June 20, 1967, and Amit, born August 16, 1972. Husband and wife, together with their children, were domiciled in Israel from the time of their marriage for 13 years. On June 25, 1975, wife came to Hanford, Kings County, California, with the three children to visit her mother. She testified that when she initially came here she did not have in mind separating or divorcing her husband or remaining in California. However, 14 days after her arrival, on July 9, 1975, she filed a petition for separation in Kings County. The court issued an ex parte pendente lite order awarding custody of the children to the wife and prohibiting the husband from removing them from California. She has not returned to Israel since that time.

Husband followed the wife to California. He accepted service of process, employed counsel and appeared personally at the order to show cause hearing. At that hearing the parties stipulated that the wife have custody pendente lite with certain limited visitation rights in the husband, and the husband agreed to pay $45.90 costs to the attorneys for the wife. The parties further agreed that the matter be submitted to the probation department for an investigation and report on the custody issue. The probation report is part of the record.

The husband was enjoined from removing the children from the jurisdiction of the court.

Near the end of July or early August 1975, without the wife's consent, the husband surreptitiously removed the children, took them to Israel, and has not returned. While the husband did not personally appear at subsequent proceedings in Kings County, he did appear through counsel at all subsequent proceedings.

On January 16, 1976, the wife filed an amended petition for dissolution of the marriage and the interlocutory decree from which this appeal was taken was entered on December 17, 1976. That decree awarded custody of the children to the wife with reasonable visitation in the husband, awarded $75 per child per month child support, no spousal support, $600 attorney's fees to the wife's attorney and actual costs, and awarded an undivided one-half interest in certain real and personal property situated in Israel to the wife.

Upon returning to Israel with the children the husband instituted divorce proceedings in which on June 23, 1976, he was awarded temporary custody of the children and on February 23, 1977, was awarded a decree of divorce and custody of the children by the Israel court.[1] The wife was served with process in those proceedings but did not appear in person or through counsel.

CUSTODY ISSUE

From the trial court's memorandum decision it is apparent that in exercising jurisdiction over the custody issue the court equated personal jurisdiction over the parties with subject matter jurisdiction over the custody of the children, predicating its decision on the fact that at the time of the order entered on the order to show cause the husband, the wife and the children were all present in California and the husband appeared generally and stipulated jurisdiction over the custody issue. The court then reasoned that ". . . where jurisdiction of the person or of the res has attached, it is not defeated by removal of the person or the res beyond the territorial jurisdiction of the court." The false premise upon which this conclusion is grounded is that jurisdiction over the custody issue initially attached. ■ Determinative of this central issue is: (1) The fact that subject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel. (*Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 773-776 [197 P.2d 739] (disapproved on other grounds in *Robinson* v. *Superior Court* (1950) 35 Cal.2d 379, 386 [218 P.2d 10]); *Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; see *Smith* v. *Superior Court* (1977) 68 Cal.App.3d 457, 464-465, fn. 3 [137 Cal.Rptr. 348]; 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 10, pp. 534-536.) In addition, the Uniform Commissioner's note to the provision in the Uniform Child Custody and

---

[1] The husband has requested that the court take judicial notice of these Israel decrees, certified and exemplified copies of which have been furnished. No opposition having been received. we grant the motion.

Jurisdiction Act (the Act) which is substantially identical to Civil Code section 5152, subdivision (1)(b), states in part: "The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction." (9 U. Laws Ann. (1973) p. 108.) ▪ (2) The exclusive method of determining subject matter jurisdiction in custody cases in California is the Uniform Child Custody and Jurisdiction Act (Civ. Code,[2] §§ 5150-5174). The provisions of the Act supersede any contrary decisional and statutory laws. (*In re Marriage of Steiner* (1979) 89 Cal.App.3d 363, 371 [152 Cal.Rptr. 612]; *Smith* v. *Superior Court* (1977) 68 Cal.App.3d 457, 461-462 [137 Cal.Rptr. 348]; *Neal* v. *Superior Court* (1978) 84 Cal.App.3d 847, 850 [148 Cal.Rptr. 841] "[s]ection 5152 was intended to limit jurisdiction in custody disputes.") Accordingly, authorities cited by the wife predating the effective date of the Act in 1973 are inapposite.

Section 5152 of the Act sets forth specifically the bases upon which jurisdiction over the custody issue may be exercised. First, it is noted that there is no provision in the Act for jurisdiction to be established by reason of the presence of the parties or by stipulation or consent. The Act expressly provides that the mere physical presence or the absence of the minor is neither a prerequisite to nor is it determinative of the custody issue. (§ 5152, subds. (2), (3).) The affirmative provisions of the Act pertinent to this case which do govern jurisdiction are:

"(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

"(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the

---

[2]All references to code sections are to the Civil Code unless otherwise indicated.

child's present or future care, protection, training, and personal relationships.

" . . . . . . . . . . . . . . . . .

"(d)    (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction." (Civ. Code, § 5152.)

Referring first to the home state rule (§ 5152, subd. (1)(a)), home state is defined in section 5151, subdivision (5), as: "(5) 'Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."

■  Because the children were only in California for approximately two weeks before the filing of the separation and custody petition and spent a total of approximately one month here, it is manifest that the preferred home state jurisdictional prerequisite was not satisfied.

We pass next to subdivision (1)(b) of section 5152, containing what is often referred to as the significant relationship test. A fuller understanding of the philosophy of this section can be had by reference to the general purposes of the Act as set forth in section 5150 and the commissioner's note.[3]

---

[3]Section 5150 sets forth the purposes of the Act. Subdivision (1)(b) and (c), containing two of those purposes, states:

"(1) The general purposes of this title are to:

" . . . . . . . . . . . . . . .

"(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.

"(c) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state."

The general purposes of the Act extend to the international area. (§ 5172.)

Having a significant bearing upon this issue is the commissioner's note to section 5152,

Based upon the record herein it is readily apparent that the children in this case did not have the requisite significant relationship to this state and that Israel was the state having the maximum contacts. The children were in California for two weeks when the petition was filed and were here a total of approximately one month. The parents had established their home in Israel and lived there for 13 years. The children had lived there their entire lives.

The husband is a scientist with a Ph.D. He has permanent employment, earning approximately $690 per month with a net take-home pay of $290 per month. At the time of the dissolution action in California the wife was working as a full-time manager of a family-owned apartment complex. She had secretarial employment experience. The income from her full-time employment earned her a net monthly pay of $258.75.

Except for the wife's testimony regarding her future plans for the education, care and upbringing of the children, all of the evidence concerning the children's present and future care, protection, training and personal relationships was in Israel. The probation officer's report[4] contains a number of communications to him from experts who were thoroughly familiar with the husband and wife and the children in Israel, demonstrating that Israel is the location of the evidence relevant to the issue of the best interests of the children and the qualifications of the parents to take custody. There was a letter from Dr. Ruth Sharon, the children's pediatrician and pediatric neurologist; a letter of Dr. A. Raviv, clinical and educational psychologist and head of school psychological services in the central area; a letter of Mr. Zvi Salent, head welfare official, Welfare Office, Jerusalem.

---

subdivision (1)(b), which states in part:

"Paragraph (2) of subsection (a) [Civ. Code, § 5152, subd. (1)(b)] is supplemented by subsection (b) [Civ. Code, § 5152, subd. (2)] which is designed to discourage unilateral removal of children to other states and to guard generally against too liberal an interpretation of paragraph (2) [Civ. Code, § 5152, subd. (1)(b)]. Short-term presence in the state is not enough even though there may be an intent to stay longer, perhaps an intent to establish a technical 'domicile' for divorce or other purposes.

"Paragraph (2) [here § 5152, subd. (1)(b)] perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state." (9 U.Laws Ann. (1973) p. 108.)

[4] The probation officer was unable to make a recommendation regarding custody.

It was shown that the children attended school in Israel, have a number of peer acquaintances and relatives there and, though they miss their mother, have adjusted well under the circumstances. Apparently the only contact in California is the presence of the mother and maternal grandmother and there is no evidence regarding the nature of the personal relationship between the children and the grandmother. The probation report summarized information that had been received from Israel to the effect that cultural differences between the two countries would cause the children distress if they were relocated in the United States.

Based on the foregoing, we hold that Kings County Superior Court did not have jurisdiction under subdivision (1)(b) of section 5152 to pass upon the custody issue.

Turning next to subdivision (1)(d) of section 5152, it is noticed that one of the requirements is that "it is in the best interest of the child that this court assume jurisdiction." As has been pointed out, the code commissioner commented on what was intended by the term "best interest." (See fn. 3, *ante.*) As there stated: "[J]urisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum . . . is not sufficient without additional factors establishing closer ties with the state." (9 U. Laws Ann. (1973) p. 108.) *Clark* v. *Superior Court* (1977) 73 Cal.App.3d 298, 308-309 [140 Cal.Rptr. 709], approves the comment of Bodenheimer in the Vanderbilt Law Review (Bodenheimer, *Uniform Child Custody Jurisdiction Act* (1969) 22 Vand.L.Rev. 1207): " 'As a general proposition the state in which there is the best opportunity to investigate the facts is most qualified to take jurisdiction.' (Bodenheimer, *op cit.,* 22 Vand.L.Rev. at p. 1221.) The same thought has been expressed by another commentator as follows: 'All discussions agree that in an interstate custody dispute the interests of the children are paramount. To increase the probability that a custody decision will be in the best interests of the child, the case should be decided in the court with greatest access to the relevant evidence.' (Comment (1974) 62 Cal.L.Rev. 365, 371.)"

Inherent in the notion of the best interests of the child are the criteria set forth in subdivision (1)(b) of section 5152 (significant relationship), which in this instance are determinative of the "best interest" issue under

subdivision (1)(d) of section 5152. For the reasons we have already stated, it is apparent that California has only minimum access to the facts relevant to the custody issue and that it is in the best interests of the children that California not assume to determine custody.

■ The wife contends that the husband should be barred from contesting the validity of the California decree under the equitable doctrine of unclean hands. The doctrine and the case law in which it finds its genesis have been codified in section 5157[5] of the Act. The argument must be rejected. First, for the same reason that subject matter jurisdiction cannot be conferred by consent, such jurisdiction cannot be assumed by virtue of the unclean hands doctrine. Secondly, by the terms of section 5157 and the cases from which it is derived, the doctrine has only been applied against the wrongdoing parent who is a petitioner seeking to invoke the jurisdiction of the California court where the petitioning parent was in clear violation of another state's decree. It does not appear to have been applied against a parent defending against a dissolution and custody petition filed by the other spouse. Lastly, the application of the doctrine in any event is discretionary with the trial court. (*Ferreira* v. *Ferreira* (1973) 9 Cal.3d 824, 835, fn. 10 [109 Cal.Rptr. 80, 512 P.2d 304].) From the record below it does not appear that the trial court refused to recognize that the husband had standing to litigate or that he was precluded from relief upon this ground.

## ATTORNEY'S FEES ISSUE

■ The award of attorney's fees is governed by section 4370. The necessity and amount thereof are matters within the sound discretion of the trial court. (*In re Marriage of Rosan* (1972) 24 Cal.App.3d 885 [101 Cal.Rptr. 295].) Upon the evidence before the court in this case the award of $600 attorney's fees plus costs was not an abuse of discretion.

---

[5]Subdivisions (1) and (2) of section 5157 provide:

"(1) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction for purposes of adjudication of custody if this is just and proper under the circumstances.

"(2) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances."

### DIVISION OF PROPERTY IN ISRAEL

The decree appealed from states in part:

"5. The quasi-community property of the parties is awarded as follows: Petitioner and Respondent are each awarded an undivided one-half (½) interest in and to the following real and personal property:

"a. Real Property and improvements situated at No. 17 Gluskin Blvd., City of Rehovot, State of Israel.

"b. One (1) acre of property situate in Sitriya, State of Israel."

Appellant contends the award is improper and contrary to law because the California court lacks jurisdiction to award quasi-community real property located in Israel, that the decree violates California law because it does not divide the property but awards it in undivided interests and the court failed to value the assets and assign the liabilities. (§ 4800.)

Under section 4803, quasi-community property includes real property acquired by either spouse while domiciled elsewhere which would have been community property if acquired while domiciled in this state.

As to appellant's contention that the court erred in failing to ascertain the value of the items of property and in not making a more detailed division of the property, appellant in his reply brief in the court below suggested that under the circumstances the type of award made would be the only practical way the court could act. The statement amounts to a consent to a division in this manner. Appellant's statement as to the manner of division necessarily includes an understanding that making further evaluations would be unnecessary. (§ 4800, subd. (a); *In re Marriage of Hendle* (1976) 56 Cal.App.3d 814, 817 [128 Cal.Rptr. 854]; *In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 485 [97 Cal.Rptr. 274]; see *In re Marriage of Folb* (1975) 53 Cal.App.3d 862, 875 [126 Cal.Rptr. 306] (disapproved on other grounds in *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 749, fn. 5 [131 Cal.Rptr. 873, 552 P.2d 1169]).)

It is recognized that California cannot enter a decree directly affecting title or interest in real property outside its borders. (*Rozan v. Rozan* (1957) 49 Cal.2d 322, 330 [317 P.2d 11].) It may, however, establish and declare the interests in such property and enter orders in aid of such declaration requiring the parties to execute conveyances in compliance therewith. (§ 4800.5, subd. (b)(1); *Rozan v. Rozan, supra,* 49 Cal.2d 322,

330.) In support of the judgment we interpret the decree entered as a mere declaration of entitlement to the property which has no direct effect on the title to the property in Israel.

That part of the judgment awarding custody of the minor children to the wife and ordering the husband to pay support for said children is reversed. In all other respects the judgment is affirmed. Each party to bear his or her own costs.

Franson, J., and Best, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.