[Civ. No. 23314. Third Dist. May 16, 1984.]

GERARD MARCEL PLAS, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
MELINDA CORELL PLAS, Real Party in Interest.

### COUNSEL

Kenneth D. Robin for Petitioner.

John K. Van de Kamp, Attorney General, Mary Roth and Gloria F. DeHart, Deputy Attorneys General, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Litts, Mullen, Perovich, Sullivan & Newton and Craig Rasmussen for Real Party in Interest.

### OPINION

**PUGLIA, P. J.**—This is a child custody dispute arising under the Uniform Child Custody Jurisdiction Act (9 West's U.Laws Ann. (1979) p. 116 et seq.; Cal. Civ. Code, §§ 5150-5174, Stats. 1973, ch. 693, eff. Jan. 1, 1974). Respondent court and a court in France have issued conflicting temporary custody orders.

The instant petition for writ of mandate and prohibition raises the issue whether the trial court correctly found it had subject matter jurisdiction to

determine the issue of custody. We shall conclude the court did not have jurisdiction. Moreover, even had there been jurisdiction, the trial court abused its discretion in refusing to decline its exercise and stay proceedings pending a determination by the court in France.

The petitioner, Gerard Plas, is a citizen and resident of France. Real party in interest, Melinda Plas, is an American citizen. The Attorney General of California appears as amicus curiae in support of the petitioner, Gerard Plas.

Melinda moved to France in the early 1970's and began living with Gerard in September 1973. The parties were married in June 1978. In 1974, Melinda applied for a permanent French resident's card and became a French resident.

In December 1979, the parties' son, Gwen, was born at the family home in Montpellier, France. Gwen's nationality is French, but he has dual citizenship by virtue of the fact that Melinda maintained her American citizenship.

In both 1980 and 1981, Melinda and Gwen spent the holiday season from Thanksgiving through New Year's with Melinda's parents in Acampo, near Stockton. In November 1982, Melinda and Gwen again left France for a "holiday visit" with the child's maternal grandparents.[1] In February 1983, Melinda informed Gerard their marriage was over and that neither she nor Gwen would be returning to France.

On March 16, 1983, Gerard arrived in Acampo for the ostensible purpose of discussing the parties' marital difficulties. Reconciliation efforts failed, and on the following day, March 17, without Melinda's knowledge or consent, Gerard took Gwen with the intent of returning to France. On March 18, 1983, Melinda initiated the subject litigation in respondent court by filing a petition for legal separation and obtaining an ex parte order awarding her temporary custody of Gwen. Melinda was able to locate Gerard and Gwen in Toronto, Ontario, and with the assistance of Canadian authorities, Gwen was returned to Melinda. Gerard returned to France without Gwen and on March 24, 1983, filed divorce proceedings in France.

---

[1]The record shows that Gerard, along with Melinda's friends in France, believed Melinda was simply making her annual visit to California. Yet, in Melinda's initial declaration, filed March 18, 1983, she stated: "Difficulties in [my] marriage led me to return to my parents' home in Acampo, California, on November 19, 1982. I returned with our son . . . and intended upon commencing dissolution proceedings in California and residing in Acampo, California, permanently."

Gerard made a special appearance in respondent court, seeking to quash or dismiss the proceedings, or, alternatively, for an order staying the proceedings pending a determination of the custody issue in France. The matter was heard in May 1983, and, following the presentation of written evidence and argument, respondent court entered a statement of decision and order determining (1) the court had jurisdiction to decide the custody issue, and (2) the court would not stay its proceedings pending resolution of the proceedings in France. The court continued its previous order granting Melinda temporary custody of Gwen.

In May 1983, a French court entered an order awarding Gerard temporary custody of Gwen.

I

■ The exclusive method of determining subject matter jurisdiction in custody cases in California is the Uniform Child Custody Jurisdiction Act (Act) adopted by California in 1973. (9 West's U.Laws Ann., *op. cit. supra*, § 3, p. 122; Civ. Code, §§ 5150-5174.) "The provisions of the Act supersede any contrary decisional and statutory laws." (*In re Marriage of Ben-Yehoshua* (1979) 91 Cal.App.3d 259, 264 [154 Cal.Rptr. 80].)

The intent of the Act has always been that its general policies apply to international custody cases as well. (*Miller* v. *Superior Court* (1978) 22 Cal.3d 923, 928 [151 Cal.Rptr. 6, 587 P.2d 723]; *Hattoum* v. *Hattoum* (1982) 295 Pa.Super. 169 [441 A.2d 403, 405]; *In re Marriage of Ben-Yehoshua, supra,* 91 Cal.App.3d at p. 265, fn. 3.) "The general policies of this title extend to the international area. The provisions of this title relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons."[2] (Civ. Code, § 5172; all references hereafter to sections of an unspecified code are to the Civil Code.)

■ In all disputes under the Act, the threshold question is which state may properly assume jurisdiction. (*Diane W.* v. *Norman W.* (1982) 112 Misc.2d 114 [446 N.Y.S.2d 174, 175].) Section 5152 sets forth the basis upon which jurisdiction over custody may be exercised. There is no provision in the Act for jurisdiction to be established by reason of the presence

---

[2]There is nothing in the record from which to infer that Melinda has not been given reasonable notice and opportunity to be heard in the proceedings currently pending in France. While Melinda has not personally attended the French proceedings, she has been represented there by counsel.

of the parties or by stipulation or consent. (*In re Marriage of Ben-Yehoshua, supra,* 91 Cal.App.3d at p. 264.) The Act expressly provides the mere physical presence or the absence of the minor is not a prerequisite to jurisdiction over the issue of custody. (*Ibid.;* see § 5152, subds. (2), (3).) The relevant provisions of the Act governing jurisdiction are found in subdivision (1) of section 5152: "(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

"(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."[3]

The Act gives preference to "home state" jurisdiction under section 5152, subdivision (1)(a). (*Hattoum* v. *Hattoum, supra,* 295 Pa.Super. 169 [441 A.2d at p. 405]; see *Hafer* v. *Superior Court* (1981) 126 Cal.App.3d 856, 866 [179 Cal.Rptr. 132].)[4] " 'Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence

---

[3] The grounds for jurisdiction set forth in subdivisions (1)(c) and (1)(d) of section 5152 are inapplicable to the present controversy. Our inquiry is limited to subdivisions (1)(a) and (1)(b).

[4] "The statutory scheme fashioned by the National Conference of Commissioners on Uniform State Legislation is premised on a well-founded assumption that it is in a child's best interest to have his custody decided by a court of his home state. We do not have to look any further than the statute's purposes as they are outlined in HRS § 583 [§ 5150] for reasons sustaining the assumption. And, of course, '[t]he interest of the child is served when the forum has optimum access to relevant evidence about the child and family.' . . . The provision in § 583-3(a)(2) [§ 5152, subd. (1)(b)] sanctioning the exercise of jurisdiction if 'it is in the best interest of the child' is only intended to infuse flexibility into the statute's application, for the numerous fact situations arising in custody battles could not possibly be covered specifically. *Id.* It does not alter the basic assumption that the child's home state normally is in the best position to render a decision on his custody." (*Allen* v. *Allen* (1982) 64 Hawaii 553 [645 P.2d 300, 307, fn. 9].)

of any of the named persons are counted as part of the six-month or other period." (§ 5151, subd. (5).)

■ At the time Melinda filed her initial petition for temporary custody, Gwen and Melinda had been living in California only four months. Melinda conceded and the trial court found that home state jurisdiction was not established.

The trial court did find jurisdiction, however, based upon the "significant connection" test (also called the significant relationship test) of subdivision (1)(b) of section 5152. (See *In re Marriage of Ben-Yehoshua, supra,* 91 Cal.App.3d at p. 265.) Under this test, a California court may assume jurisdiction only if "it is in the best interest of the child," a conclusion which cannot be reached unless it is demonstrated the child and at least one parent have a significant connection with this state *and* that there is available in California substantial evidence concerning the child's care and relationships with others. (*Neal* v. *Superior Court* (1978) 84 Cal.App.3d 847, 849 [148 Cal.Rptr. 841]; *Allen* v. *Allen, supra,* 64 Hawaii 553 [645 P.2d at p. 306]; *William L.* v. *Michele P.* (1979) 99 Misc.2d 346 [416 N.Y.S.2d 477, 480].)

In determining whether there was a significant connection or relationship sufficient to confer jurisdiction, the trial court examined the facts as they existed in May 1981 at the time of the hearing.[5] The court noted Gwen and his mother had lived in California for over six months. During that period, Gwen commenced an ongoing medical relationship with a California pediatrician and began attending preschool. Gwen was also developing friendships among his schoolmates and a close family relationship with his maternal grandparents and Melinda's other relatives. The trial court determined the foregoing, together with the fact that Gwen had spent "the critical social development months between the ages of three and three and one-

---

[5]*In re Marriage of Hopson* (1980) 110 Cal.App.3d 884 [168 Cal.Rptr. 345], states that in determining whether there is a significant connection sufficient to confer jurisdiction pursuant to subdivision (1)(b) of section 5152, the critical time is the date of the hearing rather than the commencement of the action. (*Id.,* at p. 894.) In support of this assertion, *Hopson* cites *In re Marriage of Steiner* (1979) 89 Cal.App.3d 363, 369 [152 Cal.Rptr. 612], a case which did not consider the question, but without discussion or analysis simply examined the facts as they existed at the time of the hearing.

In our view, the better rule is that subject matter jurisdiction either exists or does not exist at the time the action is commenced. (*Bullard* v. *Bullard* (1982) 3 Hawaii App. 194 [647 P.2d 294, 299]; *Rexford* v. *Rexford* (Alaska 1980) 631 P.2d 475, 478; *Dragoo* v. *Dragoo* (1980) 99 Wis.2d 42 [298 N.W.2d 231, 232].) Otherwise the absconding parent is encouraged purposely to delay a pending custody proceeding in order to gain time to establish significant contact with the state.

In the instant case, it is of no consequence whether the facts are considered as of the time of filing the petition or the time of the hearing. Only two months elapsed between filing and hearing, and during that period there was no change in circumstances such as to warrant a different result regarding the question of significant connection as a basis for jurisdiction.

half in California," demonstrated (1) Gwen's significant connection with California and (2) that there was available in California substantial evidence concerning Gwen's present or future care, protection, training and personal relationships.[6]

Gerard takes issue with the trial court's determination that Gwen has a significant connection with California so as to support a finding of jurisdiction.

■ ■ ■ ■ Concerning the significant relationship test of section 5152, subdivision (1)(b), the Commissioners' Note (see *Schlumpf* v. *Superior Court* (1978) 79 Cal.App.3d 892, 897, fn. 3 [145 Cal.Rptr. 190]) provides the guidelines on how the section is to be interpreted.[7] ■ The Commissioners' Note states: "Paragraph [(b)] of subsection [(1)] is supplemented by subsection [(2)] which is designed to discourage unilateral removal of children to other states and to guard generally against too liberal an interpretation of paragraph [(b)]. Short-term presence in the state is not enough [to establish a significant connection with the state] even though there may be an intent to stay longer, perhaps an intent to establish a technical 'domicile' for divorce or other purposes. [¶] Paragraph [(b)] perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in [§ 5150]. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state." (Italics in original; 9 West's U.Laws Ann., *supra,* Comrs. Note to § 3, at p. 124.)

■ An examination of Gwen's connection with California in light of the guidelines set forth for interpreting the significant relationship test of section

---

[6]The court also noted as supporting its finding of jurisdiction that Gwen is an American citizen and speaks English fluently. While these facts may have some bearing on whether there is evidence available in California regarding Gwen's present and future care, protection, etc., neither fact has any bearing on whether Gwen has a significant connection with this state.

[7]" 'Reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing the statutes. . . .' " (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 630 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)

5152, subdivision (1)(b), demonstrates the trial court erred in finding jurisdiction. The trial court liberally construed subdivision (1)(b) of section 5152 to find jurisdiction; yet, the Commissioners' Note makes manifest the section is not to be liberally interpreted. (See *Sullivan* v. *Sullivan* (1982) 87 App.Div.2d 42 [451 N.Y.S.2d 851, 853].) The trial court determined Gwen's few months within California were sufficient to establish a significant connection with this state, notwithstanding both the clear proviso in the Commissioners' Note that short-term presence in the state is not sufficient and the fact that the contacts relied upon by the trial court (visiting a doctor, attending school, making friends, etc.) are unexceptional even in the context of short-term presence. While there is no question but that Gwen's connection with California satisfies almost any notion of "minimum contacts," the Commissioners' Note clearly states that *maximum* contacts are necessary to establish jurisdiction. The trial court ignored the fact that Gwen was born and raised in France, that he lived in France exclusively until shortly before the hearing, and that France is the only place where the parties and Gwen ever lived together as a family and is where Gerard has continuously maintained residence. These are the "substantial" and "significant" connections required by the Act, which California can claim only by exaggerating its minimum contacts. (See *Bacon* v. *Bacon* (1980) 97 Mich.App. 334 [293 N.W.2d 819, 821, fn. 3].)

 That the trial court erred in finding jurisdiction pursuant to the significant relationship test is further manifested by the caution in the Commissioners' Note that subdivision (1)(b) of section 5152 "perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in [§ 5150]." Among the express legislative purposes are to discourage both forum shopping and the unilateral removal of children from one forum to another. (§ 5150, subds. (1)(a)—(e).) Melinda admits in her declaration filed March 18, 1983, that she unilaterally removed Gwen to California intending all along to remain in California and to commence dissolution proceedings in this state. (See fn. 2, *ante,* p. 1013.) Considering that almost every fact found by the trial court as supporting its assumption of jurisdiction was established *after* Gwen's unilateral removal to California, the trial court's acceptance of jurisdiction encourages the type of conduct the Act was designed to prevent.

*Schlumpf* v. *Superior Court, supra,* 79 Cal.App.3d 892, relied upon by Melinda, is inapposite. In *Schlumpf* this court found sufficient contacts to support California jurisdiction pursuant to section 5152, subdivision (1)(b). The children were born in California and returned for visits to the state with their mother, who continued to reside in California. Moreover, the parties lived in California during their marriage, and the dissolution and subsequent modification of child custody proceedings were heard and determined by a

California court. These facts were sufficient to support jurisdiction pursuant to subdivision (1)(b) of section 5152. (*Id.,* at pp. 896-897.)

Unlike *Schlumpf,* however, California has no special interest in the instant case. The parties were not married here, did not reside in California at any time during their marriage, and there have been no California proceedings involving the parties until the present action.

Considering the brief time he had resided in California (both at the filing of the petition and at the time of the hearing), we conclude Gwen's connection with this state, was insufficient to support the trial court's assumption of jurisdiction pursuant to subdivision (1)(b) of section 5152. To sustain the trial court's finding of jurisdiction would simply invite the assumption of jurisdiction in cases based on the most meager of contacts with this state and lead to the emasculation of a statute designed to limit, not proliferate, the instances where jurisdiction could be assumed. (See *Sullivan* v. *Sullivan, supra,* 87 App.Div. 42 [451 N.Y.S.2d at p. 853].)

Our disposition of the jurisdictional issue does not affect the continuation of the proceedings in France. Should the court in France determine it does not have jurisdiction, or decline to exercise its jurisdiction because this state is the more appropriate forum to determine the issue of custody, the trial court could assume jurisdiction pursuant to the provisions of section 5152, subdivision (1)(d). There is thus no reason for concern that an initial finding of lack of jurisdiction forever "cuts off" Melinda's ability to have the matter decided by a California court.[8]

## II

■ Even were we to decide that jurisdiction was established, it would still be necessary to determine whether California should *exercise* its jurisdiction in this cause. "[T]he question of whether jurisdiction exists is distinct from the question of whether it should be exercised. . . . Even if a determination that jurisdiction exists is made, the court may decline to exercise jurisdiction, or it may stay the proceedings upon the condition that custody proceedings be initiated in another state." (*Johnson* v. *District Court, etc.* (Colo. 1982) [654 P.2d 827, 829]; see also *Schlumpf* v. *Superior Court, supra,* 79 Cal.App.3d at pp. 898-899.)

The Act contemplates that where there is concurrent jurisdiction, only one state should *exercise* jurisdiction. (*Hattoum* v. *Hattoum, supra,* 295

---

[8]In light of our resolution of the jurisdictional issue, it is unnecessary to discuss whether Melinda demonstrated that she also has a significant connection with California.

Pa.Super. 169 [441 A.2d at p. 406]; see 9 West's U.Laws Ann., *supra,* Comrs. Note to § 3, at p. 124.) The Act contains provisions to assist the court in determining which forum to choose. (See *In re Marriage of Hopson, supra,* 110 Cal.App.3d at pp. 899-900.) Among these provisions are those relating to common law principles of forum non conveniens. (*In re Marriage of Leonard* (1981) 122 Cal.App.3d 443, 468 [175 Cal.Rptr. 903]; *William L.* v. *Michele P., supra,* 99 Misc.2d 346 [416 N.Y.S.2d at p. 481].) Our examination of the question of inconvenient forum leads us to conclude that even if the trial court were correct in finding that California has jurisdiction, the court nonetheless abused its discretion in refusing to decline its exercise of jurisdiction.

Subdivision (1) of section 5156 states: "A court which has jurisdiction under this title to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." Subdivisions (3)(a)—(e) of section 5156 provide the factors the court should take into account in determining whether California is an inconvenient forum.

The first factor is whether another state is or recently was the child's home state. (§ 5156, subd. (3)(a).) Melinda conceded in the court below that France is Gwen's home state.

A second factor to be considered is whether another state "has a closer connection with the child and his family or with the child and one or more of the contestants." (§ 5156, subd. (3)(b).) Until he was almost three years old, Gwen lived exclusively in France, except for annual two-month vacations in California. In addition, Melinda and Gerard are both French residents, were married in France, and lived in France both prior to and during their marriage. Without question both Gwen and his parents have a closer connection with France than with California.

Subdivision (3)(c) of section 5156 provides that another state may be a more convenient forum "If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state." In declining to stay jurisdiction on the basis of inconvenient forum, the trial court, relying entirely on the facts giving rise to its finding of jurisdiction, found there is substantial evidence in California regarding Gwen's present and future care, protection, etc. We do not question the trial court's finding in this regard per se, but we note such finding ignores the fact that (1) at least as much evidence regarding Gwen's present or future care is available in France, the place where Gwen was born and where he lived until shortly before the instant proceeding was

commenced (e.g., evidence regarding Gwen's preschool and medical history is obviously available in France), and (2) the more *relevant* evidence pertaining to the instant custody dispute lies in France.

The question of "substantial evidence" within the state is dependent on the particular issues which are in dispute. (*Allison* v. *Superior Court* (1979) 99 Cal.App.3d 993, 999 [160 Cal.Rptr. 309].) Here, one of the key issues in controversy is the mental and emotional condition of Gerard, as it affects his capacity to exercise custody over Gwen. Melinda proffered evidence to prove Gerard unfit for custody, claiming he is mentally and emotionally unstable. In addition, Melinda claimed the family's living conditions in France are substandard and pose a threat to Gwen's health and safety and that access to educational and medical facilities, along with Gwen's opportunity for making friends, are lacking in light of the parties' isolated home in France. Patently, substantial evidence on the critical issues of the controversy (both parents' fitness to maintain custody, living conditions, availability of education and friends for Gwen) is more readily available in France, where those witnesses are located whose testimony would be of most benefit to the court in making an appropriate custody decree. The greater availability of such evidence in France makes the issue of inconvenient forum one where the California courts should decline to exercise jurisdiction.

Section 5156, subdivision (3)(e), provides a court of this state should not exercise jurisdiction if it "would contravene any of the purposes stated in Section 5150." Among the purposes of the Act are to litigate custody where the child and family have the closest connection and to deter the abduction and unilateral removal of children. (§ 5150, subds. (1)(c), (1)(e).) The trial court found the exercise of its jurisdiction over the custody issue would not violate any of the provisions of section 5150. We disagree. The exercise of jurisdiction in the instant case flies straight into the face of the above-cited purposes of the Act, both ignoring the obvious fact that the family has a much closer connection to France and circumventing totally the stated purposes of discouraging forum shopping and deterring the unilateral removal of children. It also ignores the fact that Melinda at no time has provided any objective reason why she could not litigate the matter in France. She is a resident of France, speaks French fluently and obviously has the resources to travel back and forth between her countries of residence and citizenship. No compelling reasons favor California as the forum unless it is assumed the French courts cannot or will not decide the matter fairly. However, there is no factual or legal basis for such an assumption and it violates the very spirit of the Act. (See *Hafer* v. *Superior Court, supra,* 126 Cal.App.3d at p. 866.)

■ The Act was also intended to avoid jurisdictional competition and conflict, foster interstate cooperation, and promote the exchange of information and other mutual assistance between courts of sister states. (§ 5150, subds. (1)(a), (1)(b), (1)(h).) Yet, it appears one of the reasons for respondent court's refusal to decline jurisdiction was the failure of the court in France to stay its proceedings and to communicate with the respondent court, in light of the fact that the California proceeding was initiated first in time.[9]

Priority in time is but one factor to be considered, lest the Act be construed as promoting "races to the courtroom." Moreover, while the French court should not have exercised jurisdiction in light of the pendency of this action, the fact remains that when dual actions are pending, the duty and need to communicate runs both ways. When informed of the proceedings in France, respondent court was obligated to communicate with the French court "to the end that the issues may be litigated in the more appropriate forum." (§ 5155, subd. (3).) It is less important which court exercises jurisdiction than that an informed decision is made in the best interest of the child. (*Rexford* v. *Rexford, supra,* [631 P.2d at p. 479].) More importantly, "We must avoid the risk of overreaction to perceived transgressions by the courts of other jurisdictions in highly charged and emotional custody controversies and carefully consider and apply the letter and spirit of the [Act] to promote its salutary goals. There is no interjurisdictional contest to be won or lost. Although overlapping jurisdiction is possible under the [Act], avoidance of competition and conflict is precisely the reason for its enactment." (*Bowden* v. *Bowden* (1982) 182 N.J.Super. 307 [440 A.2d 1160, 1164].) Our trial courts must act with cautious restraint when jurisdiction is also pending and being exercised elsewhere. (*Ibid.*) Clearly, as the aim of the Act is to promote cooperation in the best interest of the child (§ 5150, subd. (1)(b)), respondent court's refusal to decline jurisdiction on the basis of the French court's failure to stay its proceedings and to communicate cannot be upheld.

---

[9]Section 5155 provides in relevant part: "(1) A court of this state shall not exercise its jurisdiction under this title if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this title, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons. . . . [¶] (3) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with Sections 5168 through 5171. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum."

██ Finally, the Act was designed so that a custody decree be rendered "in that state which can best decide the case *in the interest of the child.*" (Italics added; § 5150, subd. (1)(b).) Where the trial court considers "the best interest of the child," it does so, not for the purpose of deciding whether the child would be better off with the mother or the father, but for the limited purpose of deciding whether it is in a better position than another court "to decide the merits of the case and thus serve the best interests of the child." (Fn. omitted; *Hawkins* v. *Hawkins* (1972) 264 Ore. 221 [504 P.2d 709, 717], cited with approval in *Matter of Custody of Ross* (1981) 291 Ore. 263 [630 P.2d 353, 361]; see 9 West's U.Laws Ann., *supra,* Comrs. Note to § 3, at p. 124, "The interest of the child is served when the forum has optimum access to relevant evidence about the child and family.") This record makes obvious the fact that the French courts are in a much better position to decide the issue of custody.

The trial court's decision refusing to decline jurisdiction on the basis of inconvenient forum was not consonant with objectives such as the avoidance of jurisdictional competition and the deterrence of unilateral removals of children from one state to another. Those objectives, plus the facts that Gwen and his parents have a closer connection with France than with California and the bulk of the evidence relating to the issue of custody lies in France, lead us to conclude that even if California had jurisdiction, the trial court abused its discretion in refusing to stay the action pending the outcome of proceedings already commenced in France. (Cf. *Schlumpf* v. *Superior Court, supra,* 79 Cal.App.3d at pp. 898-902.)

Let a peremptory writ of mandate issue directing respondent court to vacate its order and to enter a new order dismissing the petition insofar as it relates to the issue of custody.

Carr, J., and Sims, J., concurred.

A petition for a rehearing was denied June 12, 1984, and the petition of real party in interest for a hearing by the Supreme Court was denied July 11, 1984. Bird, C. J., was of the opinion that the petition should be granted.