**Frankie Gayla FALCO ADKINS,
Petitioner–Appellant,**

v.

**Carmelo Abel FALCO ANTAPARA,
Respondent–Appellee.**

Court of Appeals of Tennessee,
Eastern Section.

Dec. 17, 1992.

Permission to Appeal Denied by
Supreme Court March 22, 1993.

Judith R. Whitfield, Oak Ridge, for petitioner-appellant.

Leonard H. Rubin, Miami, FL, and Philip R. Crye, Jr., with Ridenour Law Office, Clinton, for respondent-appellee.

## OPINION

SANDERS, Presiding Judge, Eastern Section.

The Petitioner appeals from a chancery court decree dismissing her petition for custody of the two minor children of the Petitioner and Respondent.

Petitioner–Appellant, Frankie Gayla Falco Adkins, (Mrs. Falco) and Respondent–Appellee Carmello Falco Antapara (Mr. Falco) were married in Tennessee in 1975. Mr. Falco is a native and citizen of Panama. Shortly after their marriage, the Falcos moved to Panama City, Panama, where they both lived continuously until January 17, 1992. They have two children, who are the subject of this lawsuit. Both children were born in Panama and are citizens of both Panama and the United States. In Panama, Mrs. Falco had worked as a civilian employee of the United States Army for 15 years. Mr. Falco currently owns and runs a jewelry business in Panama City. They sent their children to an "American" school run by the Department of Defense.

From the record, it appears the couple had a good marriage, with the only problem being Mrs. Falco's desire to return permanently to the United States with her entire family due to what she perceives as unsafe living conditions in Panama. Mrs. Falco does not allege Mr. Falco is an unfit parent or a bad husband.

On January 17, 1992, Mrs. Falco picked up the two children, ages five and eight, from school in Panama and flew to Tennessee. She did this without the knowledge or consent of her husband. Planning for her departure, Mrs. Falco had requested and received a transfer of her employment to Ft. Richie, Maryland. Furthermore, she had arranged for the Department of Defense to pay for Mr. Falco's moving expenses as well, including the costs associated with selling their home in Panama. Mr. Falco, however, refused to move to the United States.

Upon their arrival in the United States, Mrs. Falco took the children to her mother's home in Oliver Springs, Tennessee. On January 23, 1992, she filed a petition for custody of the children in the Anderson County Chancery Court. She relied on the Tennessee Uniform Child Custody Jurisdiction Act (UCCJA) § 36–6–201, et seq., as grounds for jurisdiction in the Tennessee court. She alleged she feared her husband would come to Tennessee and abscond with the children, using their Panamanian passports. She requested she be given sole custody and Mr. Falco be denied any visitation privileges until he surrendered the children's Panamanian passports to the court. She also filed an affidavit asserting, among other things, that she left Panama with her children out of "fear for our safety in the corrupt and chaotic conditions in Panama." She stated her home had been burglarized in Panama City despite having iron bars on the windows; her next-door neighbor's house was robbed by men carrying machine guns; "everywhere one goes, one sees armed private guards with machine guns"; and the economic situation has worsened since the American invasion in "Operation Just Cause". She said she considered initiating custody proceedings in Panama but was advised by Panamanian attorneys to do so in the United States. She said her husband spent a great deal of time in Miami on business; she begged her husband to leave Panama but he refused. Further, she stated she would be moving to the Ft. Richie, Maryland, area effective February 10, 1992.

The court granted Mrs. Falco temporary custody of the children and ordered a show cause hearing for Mr. Falco to show why temporary custody should not continue in Mrs. Falco.

Mr. Falco, however, had already petitioned the Juvenile Court of Panama, on January 21, 1992, for custody of the two children. On February 12, 1992, the Panamanian court entered a "resolution" (order) requiring Mrs. Falco to return the children to Panama and granting Mr. Falco temporary custody. The Panamanian court found Panama was the children's "habitual residence" for purposes of.custody jurisdiction. The court based its finding on various documents including the children's school progress reports, certification of their doctor, honors certificates, etc. The "resolution" also took notice of the pending action in Tennessee. The "resolution" was basically akin to the temporary custody decree Mrs. Falco received in Tennessee.

Mr. Falco then moved to dismiss the Tennessee custody proceedings, asserting that under the Tennessee UCCJA, the trial court did not have jurisdiction and if it did, the court should decline to exercise it. Mr. Falco further filed motions urging the court to recognize the Panamanian decree. He also filed an affidavit denying conditions in Panama were as chaotic as Mrs. Falco described. He also stated his wife did not tell him she planned to transfer to Ft. Richie, Maryland, and his wife was now living in Maryland and thus had no valid nexus to Tennessee.

The chancery court granted Mr. Falco's motion to dismiss, stating: "[T]he Court finds that the 'home state' of the minor children of the parties, as defined by T.C.A. § 36–6–205(5), is the Republic of Panama, where the children resided within the period of six (6) months before commencement of this action; that the Republic of Panama is proceeding upon the father's Petition for Custody and has not relinquished its jurisdiction; that the State of Tennessee has no significant connection with the dispute underlying this cause, nor is there available in this state substantial evidence concerning the children's present or future care, pro-

tection, training and personal relationships; that, therefore, this Court lacks subject matter jurisdiction of this cause; that even if the Court had subject matter jurisdiction, this Court would be an inconvenient forum to litigate this dispute; and that as a result the Motion to Dismiss should be sustained."

Mrs. Falco has appealed, saying the sustaining of the motion to dismiss was in error. She insists no "state," as defined under the UCCJA, has jurisdiction and it would be in the best interests of the children if Tennessee would assume jurisdiction.

We cannot agree, and affirm for the reasons hereinafter stated.

Tennessee enacted its version of the UCCJA in 1979. Among the UCCJA's stated general purposes are to:

(1) Avoid jurisdictional competition and conflict with the courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well being;

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of the child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

\* \* \* \* \* \*

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.

(6) Avoid re-litigation of custody decisions of other states in this state as far as feasible;

(7) Facilitate the enforcement of custody decrees of other states;

§ 36–6–201(a).

■ When there is a jurisdictional dispute, the UCCJA directs courts to employ a "home state" analysis to decide if Tennessee may exercise jurisdiction. *See* Tenn. Code Ann. § 36–6–203. If there appears to be no home state, then Tennessee may, under certain conditions, exercise jurisdiction. *Id.*

Section 36–6–202(5) of the UCCJA states:

(5) "Home State" means the state in which the child immediately preceding the time involved lived with such child's parents, a parent or a person acting as parent, for at least six (6) consecutive months.... Periods of absence of any of the named persons are counted as part of the six (6) months....

\* \* \* \* \* \*

(10) "State" means any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia.

Mrs. Falco questions whether the home state analysis is appropriate when the court is dealing with a foreign country instead of another state as defined by the UCCJA. She asserts the UCCJA's international application does not require the home state determination to be determinative in deciding whether to exercise jurisdiction. She also asserts that because Panama cannot be considered a "home state" under the statutory definition, there is no home state and, therefore, Tennessee can exercise jurisdiction since it would be in the best interests of the children.

Section 36–6–224 of the UCCJA states: The *general policies* of this part extend to the international area. The provisions of this part relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons. (Emphasis ours.)

We think, simply by looking at the general purposes enunciated by § 36–6–201(a) (stated *supra*) and the UCCJA's fundamental policy of using a home state analysis to decide jurisdiction, the home state analysis may be used when deciding jurisdiction as between a state and a foreign nation. Other jurisdictions have treated foreign countries as states when using UCCJA's home state analysis. *See e.g. Middleton v. Middleton,* 227 Va. 82, 314 S.E.2d 362 (1984); *Brown v. Tan,* 395 So.2d 1249 (Fla.Dist.Ct.App.1981); *Ben–Yehoshua v. Ben–Yehoshua,* 154 Cal.Rptr. 80, 91 Cal.App.3d 259 (1979).

Under the facts in the case at bar, we cannot say the trial court was in error in treating Panama as the equivalent of a statutory home state.

■ T.C.A. § 36–6–224 requires Tennessee courts to enforce foreign custody decrees "rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons." Mrs. Falco asserts she was not given notice nor an opportunity to be heard prior to the February 20, 1992, "resolution" by the Panamanian Juvenile Court and, therefore, Tennessee should not recognize the child custody action by the Panamanian court. She also contends it was error for the trial court not to make an inquiry into the custody laws of Panama before declining jurisdiction and to decline jurisdiction when there was no showing that Panama has adopted laws substantially similar to the provisions of the UCCJA.

These identical issues were raised in *Suarez Ortega v. Pujals de Suarez,* 465 So.2d 607 (Fla.Dist.Ct.App.1985). In *Suarez,* the husband asserted the home state of the child in question was Mexico and therefore, under the UCCJA, the Florida court should have deferred to the Mexican provisional order of custody. The court replied:

Although the Mexican provisional custody decree was obtained by the husband after an ex parte hearing, this procedure is the same as that followed in Florida. There has been no showing that the Mexican court will not accord minimum due

process when ruling on the issue of permanent child custody.

\* \* \* \* \* \*

Neither has it been shown that Mexico would not exercise jurisdiction in principles embodied in the UCCJA (citation). The authority of the trial court in this case rested solely on the fact that the wife, obviously seeking a friendlier forum, brought the child to this state.

*Id.* at 609.

In the case at bar, the Panamanian "resolution" of which Mrs. Falco complains not receiving notice is basically the equivalent to the ex parte temporary custody decree she received in Tennessee. Mr. Falco did not have prior notice nor an opportunity to be heard concerning the Tennessee grant of temporary custody. The Panamanian resolution only directed Mrs. Falco to bring the children back to Panama so a permanent custody hearing can be had. Furthermore, she has been served notice of the permanent custody hearing in Panama. She has employed Panamanian counsel and has filed papers with the Panamanian court asking for custody and child support.

There has been no showing that the Panamanian court will not accord Mrs. Falco due process or that the Panamanian court will not exercise its jurisdiction in accordance with the principles embodied in the UCCJA. Mrs. Falco has offered no proof as to the unfairness of the Panamanian courts which she alleges. We believe it was her burden to prove she will not receive due process in Panama and that Panama will not exercise jurisdiction in accordance with the policies embodied by the UCCJA.

If the courts of this state are petitioned to take jurisdiction of custody matters involving children in this state but whose home (state) is in another nation, and the petitioner can establish that the legal institutions in their home country will not accord due process when ruling on the matter, then nothing in this opinion shall be construed as controlling in such cases.

■ Under § 36–6–203 of the UCCJA, a court has jurisdiction to make a custody determination in three situations. The first situation is when the state "(A) Is the home state of the child at the time of commencement of the proceeding; or (B) Had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state." Tenn.Code Ann. § 36–6–203(a)(1).

Mrs. Falco has never asserted that Tennessee is the children's home state. Indeed, the children were born and have lived their entire lives in Panama. They had been in Tennessee less than a week when their mother filed for custody. Tennessee is not the children's home state and, therefore, the state cannot exercise jurisdiction pursuant to this section.

Second, a court may exercise jurisdiction if "(A) It appears no state has jurisdiction under subdivision (a)(1), or each state with jurisdiction under subdivision (a)(1) has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child; and (B) The child and at least one (1) contestant have a significant connection with this state; and (C) There is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationship; and (D) It is in the best interest of the child that a court of this state assume jurisdiction." § 36–6–203(a)(2).

The trial court would not be able to exercise jurisdiction under this subdivision. As discussed above, the home state analysis may apply to foreign countries. Under § 36–6–202(5), Panama meets the requirement to be considered the children's home state. The children have lived there for the past six months. In fact, they have lived in Panama since birth. Further, it is clear that Panama has exercised jurisdiction. A Panamanian court has issued an order directing Mrs. Falco to return to Panama with the children, granted Mr. Falco temporary custody of the children, and deter-

mined that Panama is the children's home state.

■ Even if we were to rule that the home state analysis does not apply to Panama, there would still be no basis for Tennessee to exercise jurisdiction under this subdivision. There is clearly no significant connection between the children and the State of Tennessee. Their only connection to Tennessee is that their grandmother lives here, their mother grew up here, they visited here on occasion, and their mother brought them here for two weeks after fleeing Panama. All the relevant evidence concerning custody is in Panama—the children's school records, the couple's friends and financial records, etc. There is no showing such evidence exists in Tennessee. "As a general proposition the state in which there is the best opportunity to investigate the facts is most qualified to take jurisdiction." Bodenheimer, *Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand.L.Rev. 1207, 1221 (1969).

We think *Ben–Yehoshua v. Ben–Yehoshua*, 154 Cal.Rptr. 80, 91 Cal.App.3d 259 (1979), is instructive. *Ben–Yehoshua* is a divorce and child custody case. The action was brought by the wife just two weeks after she and the couple's three children arrived in California, after living in Israel from the time of their marriage which was 13 years prior. On appeal, the court ruled the trial court erred in exercising jurisdiction over the custody issue even though the court had personal jurisdiction over both parties. The court held jurisdiction was not appropriate because (1) California was not the children's home state; (2) given the facts that the children had lived their entire lives in Israel and that Israel was the location of all evidence relevant to issues of best interests of the children and qualifications of parents to take custody, the children did not have the requisite significant relationship to California; and (3) for the same reasons as cited in (2), it was in the best interests of the children that California not assume jurisdiction. We find that same rational applicable to the case at bar.

Third, a court may exercise jurisdiction if "[i]t appears that no state has jurisdiction under subdivision (a)(1) or (2) or each state has refused jurisdiction on the ground that this is the more appropriate forum to determine child custody, and it is in the best interest of the child that a court of this state assume jurisdiction." § 36–6–203(a)(3).

As discussed above, Panama has jurisdiction under subdivision (a)(1) and it has not relinquished jurisdiction. Even if this were not the case, we still believe, for reasons stated in *Ben–Yehoshua*, that it would not be in the best interests of the Falco children to have Tennessee assume custody jurisdiction.

In the case at bar, the trial court held that "even if the Court had subject matter jurisdiction, this court would be an inconvenient forum to litigate this dispute." § 36–6–208(a) of the UCCJA states:

A court which has jurisdiction under this part to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

Even if Tennessee has jurisdiction, as Mrs. Falco alleges, the trial court elected not to exercise it because Tennessee was an inconvenient forum since all the relevant evidence was in Panama. Mrs. Falco does not allege the trial court abused its discretion in its decision not to exercise jurisdiction, even if the court had it. We do not find this to be error.

The issues are found in favor of the Appellee. The decree of the chancellor is affirmed. The cost of this appeal is taxed to the Appellant and the case is remanded to the trial court.

GODDARD, J., concurs.

FRANKS, J., dissents.

FRANKS, Judge, dissenting.

The majority apparently lost sight of the fact that the Trial Court dismissed the complaint on defendant's motion to dismiss for lack of jurisdiction, when it said "We believe it was her [petitioner] burden to prove that she will not receive due process in Panama, and that Panama will not exercise jurisdiction in accordance with the policies embodied by the U.C.C.J.A."

I would remand for an evidentiary hearing which has not been accorded the plaintiff.

In my view, plaintiff's affidavits establish a disputed issue of fact on the safety and welfare of the children in Panama which is sufficient to be accorded an evidentiary hearing, assuming *arguendo* that Panama is the home state under the majority's analysis. In this regard, our Supreme Court has recognized that jurisdiction in child custody cases under these circumstances may be in more than one state. *See State, ex rel Cooper v. Hamilton,* 688 S.W.2d 821 (Tenn.1985). Moreover, when the court's jurisdiction is at issue, even a summary judgment proceeding is not appropriate. *See Nicholstone Book Bindery, Inc., v. Chelsea House Pub.,* 621 S.W.2d 560 (Tenn.1981).

Absent a special compact, no sovereign is bound to give effect within its dominions to a judgment rendered by the tribunals of another country. 28 U.S.C. 1738. Panama is not a signatory to the Hague Convention/International Child Abduction Remedies Act, and our courts are at liberty to give or refuse effect to such judgments as may be found just and equitable. 47 Am. Jur.2d, Judgments § 1215 (1969) *Annot.* 13 ALR 4th 1109.

42 U.S.C. § 11–601 (1980) provides a treaty framework to resolve and deter the international abduction and retention of children. Judgments by foreign courts pursuant to the Act are entitled to full faith and credit from U.S. courts, 42 U.S.C. § 11–603(g). If the child whose custody is at issue was habitually resident in a country that is a non-signatory to the Act, the parent seeking to enforce a foreign country judgment has no rights under the Act.

In *Mohsen v. Mohsen,* 715 F.Supp. 1063 (D.Wyoming 1989) a mother took her children from the native country of Bahrain to the U.S. When her husband filed a petition under 42 U.S.C. 11–601 in the U.S. court, that court dismissed the petition because Bahrain had not adopted the Act. *Mohsen* recognized that the aggrieved father had other remedies, since the Act is not exclusive, but is in addition to other remedies under other laws or international agreements. Tennessee's codification of the UCCJA, T.C.A. § 36–6–201, *et seq.,* may be considered such a remedy. This section, however, codifies the safeguards of the public policy exceptions of common law, i.e., if the foreign custody judgment is rendered without minimal due process it will not be honored in this State.

I would vacate the Trial Court's order summarily dismissing the complaint, remand to the Trial Court and direct that a guardian ad litem be appointed for the minor children. If the Panamanian Court's order is final and was issued pursuant to the International Child Abduction Remedies Act, the order is void under *Mohsen.* If the Panamanian order was issued pursuant to Panamanian domestic law, the order is enforceable in Tennessee only if it was issued after the proceeding had met the due process requirements of Tennessee law.

I would remand for an evidentiary hearing on the material factual issues.