LINDA MARY ALLEN, Plaintiff-Appellee, Cross-Appellant, *v.* SCOTT ETHAN ALLEN, Defendant-Appellant, Cross-Appellee

NO. 8183

(FC-D NO. 8439)

MAY 20, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY NAKAMURA, J.

The question in the case at bar is whether the Family Court of the Second Circuit erred in declining to exercise jurisdiction to determine a controversy centered on the custody of a child who had been brought to Hawaii from the family domicile in New Jersey six days before suit was filed. We granted certiorari to review the Intermediate Court of Appeals' decision that the family court abused its discretion in doing so because the appellate court's application of the Uniform Child Custody Jurisdiction Act, HRS Chapter 583, appeared at odds with *Griffith v. Griffith*, 60 Haw. 567, 592 P.2d 826 (1979). From an examination of the record we conclude the family court's decision not to assume jurisdiction was proper, and reverse the appellate court.

I.

The dispositive facts are simple and largely undisputed. Plaintiff-appellee, Cross-appellant Linda Mary Allen (Mrs. Allen) and Defendant-appellant, Cross-appellee Scott Ethan Allen (Mr. Allen) were married in New York on December 21, 1977. They established a domicile in New Jersey in July of 1978 when they moved into a house Mr. Allen had inherited from his father. Their only child, Christian Scott Allen (Christian), was born in New Jersey on August 6, 1979; he lived with his parents in the family home in Smoke Rise, New Jersey until the middle of September in 1980 when the couple separated. Mrs. Allen and Christian then lived for a short while with her parents who were also residents of New Jersey.

Mrs. Allen arrived in Hawaii with Christian on October 2, 1980; she commenced the proceedings now before us on October 8, 1980. Since she could satisfy neither the requirement of domicile or physical presence within the circuit for three months, as specified by HRS § 580-1 "in matters of annulment, divorce, and separation," nor the

prerequisite of six months' residence in the State prescribed therein for divorce actions, she purported to invoke the court's equity powers in seeking a separate maintenance decree. She petitioned for a decree permitting her to live separate and apart from Mr. Allen and orders granting her custody of Christian, support for herself and the child, and attorney's fees and costs. She simultaneously sought orders awarding her custody of Christian and restraining Mr. Allen from removing the child from the circuit pending the determination of the case; the requested temporary relief was granted *ex parte*.

Mr. Allen commenced proceedings for a custody determination in New Jersey on October 29, 1980, seeking *inter alia*, orders restraining Mrs. Allen from prosecuting a custody action elsewhere and requiring her to return Christian to New Jersey. Relief as prayed for was granted by the New Jersey court on November 21, 1980. He then appeared in the Hawaii court through counsel for the specific purpose of contesting the court's authority to make a custody determination involving Christian.

The motion to dismiss Mrs. Allen's suit and for an order requiring the return of the child to New Jersey was decided by the family court on February 18, 1981. After considering "the arguments and the affidavits, records and files presented in support and opposition to said motion," the court dismissed the action for lack of jurisdiction and because "Hawaii is an inconvenient and inappropriate forum." It ordered Mrs. Allen to return the child to New Jersey within five days; it further enjoined the prosecution of a marital or custodial action by Mrs. Allen in any jurisdiction other than New Jersey. The order for the return of the child, however, was subsequently stayed pending an appeal to this court.

The appeal was assigned to the Intermediate Court of Appeals for hearing and disposition. The appellate court concluded there was a basis for the family court's exercise of jurisdiction in HRS § 583-3(a)(2),[1] which provides that a State court competent to decide

---

[1] HRS § 583-3(a) reads:

*Jurisdiction.* (a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

·  (1) This State (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from

child custody questions has jurisdiction to determine an interstate child custody dispute if it is in the best interest of the child.[2] In the appellate court's view, the family court thus erred in concluding it lacked jurisdiction and in also concluding Hawaii was an inconvenient and inappropriate forum without an "adversary" hearing.

## II.

The Uniform Child Custody Jurisdiction Act (the Act) has been adopted by both states[3] involved in the instant custody battle in substantially the form approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1968.[4] The move for consistency in determining jurisdiction in the relevant area was prompted by a "growing public concern over the fact that thousands of children are shifted from state to state and from one family to another every year while their parents or other persons battle over their custody in the courts of

---

this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) It is in the best interest of the child that a court of this State assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (B) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this State and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) (A) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child, that this court assume jurisdiction.

[2] We read the appellate court's opinion to mean that, from the facts presented, the family court had jurisdiction, not merely to determine jurisdiction, but also to decide the case on its merits. This is, of course, inconsistent with Griffith v. Griffith, *supra*.

[3] Hawaii was one of the earlier states to pass the Act. *See* S.L.H. 1973, c. 88. New Jersey joined the fold in 1979 with the passage of 1979 N.J. Laws, c. 124.

[4] *See* Uniform Child Custody Jurisdiction Act (9 U.L.A.) §§ 1-26; HRS Chapter 583; and N.J.S.A. 2A:34-28 to 2A:34-52.

several states," Commissioners' Prefatory Note, Uniform Child Custody Jurisdiction Act (9 U.L.A.) at 111, and the Commissioners' perception that "[t]his unfortunate state of affairs has been aided and facilitated rather than discouraged by the law." *Id.* at 112.[5] Statutory law in the area of concern was lacking, and a "medley of discordant [judicial] decisions provide[d] neither a consistent set of rules nor an intelligible guide for those who . . . [were compelled to] resort to institutional settlement of custody disputes." Ratner, *Child Custody in a Federal System,* 62 Mich. L. Rev. 795, 798-99 (1964). The unsettled situation and the absence of constructive guidelines were exemplified by Restatement provisions declaring that the state where the child is domiciled, the state where he is physically present, and the state where the defendant is legally present possessed concurrent authority to determine the child's custody. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 79 (1969).

Since the Act broke new ground, the Commissioners set forth its purposes in detail. *See* Uniform Child Custody Jurisdiction Act (9 U.L.A.) § 1 and Commissioners' Note at 117. Some of these purposes were the avoidance of jurisdictional competition and conflict, cooperation among state courts, and the deterrence of abduction and other unilateral removals of children. The Commissioners' draft also provided that the Act should be read and applied with the stated objectives in mind. *Id.* The foregoing goals as well as the admonition to construe the law consistently therewith were ex-

---

[5] The Commissioners' observation in this regard was:

There is no statutory law in this area and the judicial law is so unsettled that it seems to offer nothing but a "quicksand foundation" to stand on. See Leflar, American Conflicts Law 585 (1968). See also Clark, Domestic Relations 320 (1968). There is no certainty as to which state has jurisdiction when persons seeking custody of a child approach the courts of several states simultaneously or successively. There is no certainty as to whether a custody decree rendered in one state is entitled to recognition and enforcement in another; nor as to when one state may alter a custody decree of a sister state.

The judicial trend has been toward permitting custody claimants to sue in the courts of almost any state, no matter how fleeting the contact of the child and family was with the particular state, with little regard to any conflict of law rules. See Leflar, American Conflicts Law 585-6 (1968) and Leflar, 1967 Annual Survey of American Law, Conflict of Laws 26 (1968).

Commissioners' Prefatory Note, Uniform Child Custody Jurisdiction Act, *supra,* at 112.

pressly ratified by the State legislature.[6] Our task then is to ascertain whether the family court's decision not to exercise jurisdiction was correct under the provisions of HRS § 583-3, "construed to promote the general purposes stated" in HRS § 583-1.

III.

Four possible bases for family court jurisdiction over an interstate child custody dispute are established by HRS § 583-3. The statute confers authority for the court to act if: (1) Hawaii is the child's home state when proceedings are commenced or it had been the home state within six months thereof but the child has been

---

[6] HRS § 583-1 reads:

*Purposes of chapter; construction of provisions.* (a) The general purposes of this chapter are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) Avoid relitigation of custody decisions of other states in this State insofar as feasible;

(7) Facilitate the enforcement of custody decrees of other states;

(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child; and

(9) Make uniform the law of those states which enact it.

(b) This chapter shall be construed to promote the general purposes stated in this section, and shall apply only between those states which have enacted the same or similar legislation.

removed from the State; or (2) it is in the child's best interest for the court to assume jurisdiction because of a significant connection between the child and at least one of the parties and the State and because substantial evidence relating to the present or future care of the child is available in Hawaii; or (3) the child is physically present in the State and has been abandoned or an emergency situation with respect to his care exists; or (4) no other state apparently has jurisdiction over the controversy or another state has deferred to Hawaii in the matter. But the third and fourth grounds for the exercise of authority are obviously inapplicable to the present controversy, and we focus our inquiry on whether there was a basis under HRS § 583-3(a)(1) or (2) for the family court to settle the dispute.

### A.

The family court undoubtedly would have had cause to assume jurisdiction in the interstate custody fight by virtue of HRS § 583-3(a)(1)(A) if Hawaii happened to be Christian's home state when proceedings began. However, "home state" is defined by HRS § 583-2(5) as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months." And as Mrs. Allen and Christian had been in this State for only six days when suit was filed, the child's home state for relevant purposes could not have been Hawaii. Nor could jurisdiction have attached under the alternative test prescribed by HRS § 583-3(a)(1)(B), for the removal in question was from New Jersey.

In *Griffith v. Griffith, supra,* where we were called upon to apply § 583-3(a)(1)(B) in a situation where a child had been removed from Hawaii, we concluded the jurisdictional test therein described serves to extend "the jurisdiction of a former home state . . . during the six month period while a child is acquiring a new home state by residence there." 60 Haw. at 574, 592 P.2d at 831. A former home state, we said, "continued to possess jurisdiction" though it was not accorded "the status of a home state." *Id.* Under our reading of § 583-3(a)(1)(B), a court of Christian's recent home state, New Jersey, retained power to determine his custody for at least six months after his removal pursuant to similar provisions in the New Jersey stat-

ute.[7] But the acceptance of jurisdiction by a Hawaii court under proper circumstances was still a possibility because the Act recognizes that two states may have concurrent jurisdiction in some situations until one of them determines it has a reason for assuming authority that overrides the other's interest in a case. The reference here is, of course, to § 583-3(a)(2), which sanctions the exercise of authority if "it is in the best interest of the child."

## B.

We concluded in *Griffith v. Griffith, supra,* 60 Haw. at 574, 592 P.2d at 831, that § 583-3(a)(2) called for a "judgmental test" to decide what is in the child's best interest. But we also acknowledged there were preconditions to the invocation of jurisdiction thereunder. Our statement in this regard was:

> Here a judgmental test is involved. The California court would have, under this test, jurisdiction which ousts the Hawaii court of its jurisdiction under § 583-3(a)(2)(A), only if "it is in the best interest of the child" that a California court assume jurisdiction. That conclusion could not be reached unless the conditions of §§ 583-3(a)(2)(A) and (B) were satisfied, *i.e.,* that *both* the child and one of his parents had a significant connection with California, and that substantial evidence of the child's present or future care,

---

[7] This reading is consistent with that intended by the Commissioners. The relevant portion of the Commissioners' Note to § 3 of this Act reads as follows:

> Subparagraph (ii) [subparagraph B in the Hawaii Act] of paragraph (1) extends the home state rule for an additional six-month period in order to permit suit in the home state after the child's departure. The main objective is to protect a parent who has been left by his spouse taking the child along. The provision makes clear that the stay-at-home parent, if he acts promptly, may start proceedings in his own state if he desires, without the necessity of attempting to base jurisdiction on paragraph (2). This changes the law in those states which required presence of the child as a condition for jurisdiction and consequently forced the person left behind to follow the departed person to another state, perhaps to several states in succession. See also subsection (c).

Commissioners' Note, Uniform Child Custody Jurisdiction Act, *supra,* at 123.

As we noted earlier, a New Jersey court has asserted its jurisdiction over the instant custody dispute pursuant to corresponding provisions of the New Jersey statute and had entered a temporary order restraining the prosecution of a custody action in another jurisdiction prior to the family court's dismissal of Mrs. Allen's Hawaii suit.

protection, training and personal relationships was present in California.

*Id.*

The dispositive facts recounted earlier fail to manifest the requisite connection or that substantial evidence of the child's present or future care, protection, training and personal relationship was present in Hawaii. Physical presence of the child and one of the contestants "is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination," HRS § 583-3(b), Christian had no prior contact with Hawaii, and Mrs. Allen's previous connection with the State, which antedated her marriage to Mr. Allen, could hardly be deemed significant for purposes of making a child custody determination. Hence, neither § 583-3(a)(1) nor § 583-3(a)(2) furnished a valid reason for the family court to entertain a custody case whose roots lay elsewhere. *See Both v. Superior Court,* 121 Ariz. 381, 590 P.2d 920 (1979); *In re Marriage of Ben-Yehoshua,* 91 Cal. App.3d 259, 154 Cal. Rptr. 80 (1979); *Griffith v. Griffith, supra.*

A consideration of the family court's action in the light of the uniform law's purposes reinforces our conclusion that the court did not err when it refused to hear the matter. A decision to assume jurisdiction would not have been consonant with objectives such as the avoidance of jurisdictional competition and conflict, cooperation among state courts, and the deterrence of abduction and other unilateral removals of children from one state to another. *See* note 5 *supra.* It would also have been contrary to the Commissioners' expression that the pertinent paragraph is meant "to limit jurisdiction rather than to proliferate it."[8]

---

[8] The Commissioners' Note on § 3 of the Act, in relevant part, reads:

Paragraph (2) of subsection (a) is supplemented by subsection (b) which is designed to discourage unilateral removal of children to other states and to guard generally against too liberal an interpretation of paragraph (2). Short-term presence in the state is not enough even though there may be an intent to stay longer, perhaps an intent to establish a technical "domicile" for divorce or other purposes.

Paragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in

## IV.

Having decided that the family court's application of § 583-3's jurisdictional tests was fundamentally sound, we turn to Mrs. Allen's claim of error on the court's denial of her request to adduce testimony relating to "the best interest of the child."

At the outset of the hearing on Mr. Allen's motion to dismiss Mrs. Allen's complaint, the court announced it would concern itself only with the "jurisdictional facts." We can find no fault with this, for "[t]he thrust of the Act is *jurisdictional,*" *In re Lemond,* ____ Ind. App. ____, ____, 395 N.E.2d 1287, 1292 (1979). The necessary jurisdictional facts appeared in the pleadings and affidavits submitted by both parties, and as we observed earlier, they were largely undisputed. Since a legal foundation for the court to consider more than the jurisdictional facts was absent, Mrs. Allen's plea was properly denied.[9]

The family court, however, subsequently adopted findings of fact and conclusions of law on its being an "inconvenient forum" in a form proposed by Mr. Allen's counsel. We agree with the appellate court that some of these findings and conclusions were probably unfounded because no evidentiary hearing was conducted. But inasmuch as the court's primary holding that there was no basis

---

a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction. See Clark, Domestic Relations 578 (1968). Commissioners' Note, Uniform Child Custody Jurisdiction Act, *supra,* at 124.

[9] The statutory scheme fashioned by the National Conference of Commissioners on Uniform State Legislation is premised on a well-founded assumption that it is in a child's best interest to have his custody decided by a court of his home state. We do not have to look any further than the statute's purposes as they are outlined in HRS § 583 for reasons sustaining the assumption. And, of course, "[t]he interest of the child is served when the forum has optimum access to relevant evidence about the child and family." *See* note 7 *supra.* The provision in § 583-3(a)(2) sanctioning the exercise of jurisdiction if "it is in the best interest of the child" is only intended to infuse flexibility into the statute's application, for the numerous fact situations arising in custody battles could not possibly be covered specifically. *Id.* It does not alter the basic assumption that the child's home state normally is in the best position to render a decision on his custody.

under § 583-3 for the exercise of jurisdiction is adequately supported by the record, no useful purpose would be served by a present remand for an evidentiary hearing — the *forum non conveniens* ruling was a superfluity.[10]

V.

The appellate court further concluded the judge's failure to place the substance of his conversation with a judge in New Jersey on record was error. We concur that the substance of the conversation should have been made a matter of record. Yet, in view of our conclusion that the parties' pleadings and affidavits supplied a well-grounded reason for the dismissal of the suit, the neglect could not have been prejudicial.

The complaint filed by Mrs. Allen was technically a separate maintenance suit, but the primary relief it sought was an award of custody. While the court presumably has power to enter a decree permitting her to live separate and apart from Mr. Allen, no purpose would be served by a remand of only the marital action. The residence and venue provisions of HRS Chapter 580 pose no barrier to a divorce or separation action if Mrs. Allen now chooses to file one.

The family court's dismissal of the action is affirmed.

*Shackley F. Raffetto (Mukai, Ichiki, Raffetto & MacMillan,* of counsel) and co-counsel *Donald Friedman (Friedman, Carney & Wilson,* of counsel) for defendant-appellant, cross-appellee.

*Paul R. Mancini (Case, Kay & Lynch,* of counsel) for plaintiff-appellee, cross-appellant.

---

[10] Pursuant to HRS § 583-7, a court which has jurisdiction over a custody case may decline to exercise such authority if it finds it is an inconvenient forum. In the case at bar the family court lacked jurisdiction under the tests outlined in § 583-3. Hence, there actually was no reason for the court to decide whether it was an inconvenient forum.