16 P.3d 876

Valerie Monge PUCKETT,
Plaintiff–Appellee,

v.

Jeffrey R. PUCKETT, Defendant–
Appellant.

No. 22230.

Intermediate Court of Appeals of Hawai'i.

Nov. 30, 2000.

As Amended Jan. 25 and Jan. 29, 2001.

Jeffrey R. Puckett, on the briefs, defendant-appellant pro se.

Frank T. Lockwood, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by WATANABE, J.

In this appeal, Defendant–Appellant Jeffrey R. Puckett (Husband) proffers two reasons why we should: (1) void the Divorce Decree entered by the Family Court of the First Circuit (the family court) on December 22, 1998 that dissolved his marriage with Plaintiff-Appellee Valerie Monge Puckett (Wife); and (2) nullify all orders entered by the family court in this case. First, he maintains, the family court did not have *in personam* jurisdiction over him because he was not properly served with the complaint for divorce. Second, the family court did not have subject matter jurisdiction over this case because contrary to Hawai'i Revised Statutes (HRS) § 580–1 (1993), neither he nor Wife was domiciled or physically present in the State of Hawai'i (the State) for a continuous period of at least six months immediately prior to the filing of Wife's complaint for divorce, and neither he nor Wife was domiciled or physically present in the First Circuit for a continuous period of at least three months immediately preceding the filing of the complaint for divorce.

We conclude that Husband waived the personal jurisdiction argument when he filed an answer to Wife's complaint, personally appeared at a hearing, and filed a motion to dismiss before raising the argument in two subsequent motions. As to Husband's second argument, we conclude that there is sufficient evidence in the record to indicate that Wife was domiciled in Hawai'i at the time she filed for divorce and that she was domiciled or physically present in Hawai'i for at least six months and in the First Circuit for at least three months when the family court entered the divorce decree in this case. Accordingly, the family court had subject matter jurisdiction over this case and was authorized to enter the divorce decree and other ancillary orders.

## BACKGROUND

Husband and Wife were married on July 3, 1993 in Honolulu, Hawai'i. They had one child, Son, born on August 21, 1996. The family lived in Kāne'ohe, Hawai'i until mid-January 1998, when they moved to Lee County, Florida and lived with Husband's parents in the parents' Fort Meyers winter home. Husband stated that he hoped to find a better job and provide a better life for his family in Florida.

After arriving in Florida, Husband and Wife opened up a joint account at a local bank. They registered their automobile. Husband obtained a Florida driver's license and found employment as a truck driver. Wife found employment at the Health Park Medical Center, where she worked from February 19, 1998 through May 3, 1998. On February 27, 1998, Husband registered to vote in Florida, and Wife followed suit on March 5, 1998. Wife, however, retained her Hawai'i driver's license and kept open a joint account at the Bank of Hawaii and a personal account at the Castle Medical Center Federal Credit Union.

In April 1998, Wife's parents, who lived in Kāne'ohe, Hawai'i, went to Florida for a short visit. They spent time with Wife and Son until Husband demanded that Wife return home to take care of the household. According to Wife, Husband felt that she was spending too much time with her parents. Wife stated that on the last day of her parents' visit, she woke Son up early so that she and Son could see her parents off. However, Husband told her that she could not leave and began slapping her face; he then pinned her down to the bed and threatened to kill her if she left. Wife claims that Husband's father walked into the room while all this was happening, closed the door, and accused her of using Son as a shield so that Husband could not hit her.

On May 5, 1998, while Husband was in Tampa overnight, Wife purchased airline tickets to Hawai'i for herself and Son. The next morning, Wife notified her employer that she was ill and would not be at work that day. She and Son then flew back to Hawai'i, leaving all of their personal belongings in Fort Meyers. Husband later discovered Wife's abandoned automobile in a Wal-Mart store parking lot.

## THE PROCEEDINGS BELOW

### A.

On May 8, 1998, two days after returning to Hawai'i, Wife filed the complaint for divorce that underlies this appeal.

On May 11, 1998, Wife filed two motions that were granted the same day: (1) an HRS § 580–3(b) (1993) [1] "Motion for Personal Service Without the State and Affidavit," and (2) an HRS § 580–3(c) [2] "Motion for Service by Mail." In granting the first motion, the family court expressly ordered that a certified copy of the complaint, summons, motion, and "this Order for Personal Service Without the State" be served on Husband *"personally"* by "any Sheriff, Deputy Sheriff, Police Officer, Constable or any other officer or adult person authorized under the laws of the State of Florida to effect service of legal Process upon [Husband]." (Emphasis added.) The "Order for Service by Mail" which granted Wife's second motion and was signed by a "Clerk of the Court" [3] specifically required that the complaint and summons be served "by registered or certified mail with return receipt requested and a direction to deliver to *addressee only* [.]" (Emphasis added.)

On May 11, 1998, Wife filed a "Motion and Affidavit for Pre Decree Relief," which was prepared on a preprinted family court form, seeking, among other items, the following relief:

- an order awarding sole temporary legal and physical custody of Son to Wife, with no visitation for Husband.

- an order temporarily enjoining and restraining Husband from "transferring, encumbering, wasting, or otherwise disposing of any of his or her real or personal property, except as necessary, over and above current income, for the ordi-

nary course of business or for usual living expenses."

- an order enjoining and restraining Husband from removing Son from the City and County of Honolulu.

- an order enjoining and restraining Husband "from physically abusing, threatening, or harassing" Wife and Son.

In her motion, Wife also alleged as follows:

[Husband] owns, intends to obtain, or possesses a firearm and the firearm may be used to threaten, injure or abuse any person, as follows:

a. [Husband] ☒ owns ☒ possesses the following type(s) or firearm(s):

rifle, 44 Magnum, 9mm handgun

As of May 6, 1998 . . ., the firearm(s) was/were located at . . . 16091 Siesta Ave. Fort Myers, FL 33908

. . . .

c. In the past [Husband] has ☐ used ☑ threatened to use (a) firearm(s) against me and/or the parties' children as follows . . . :

On 4/17/98 when he was hitting me, I looked at his guns and he said "don't even think of using them, I'll use them on you first".

d. I believe that [Husband] may in the future use (a) firearm(s) to threaten, injure and/or abuse me, the parties' children and/or someone else because: He has threatened to do so many times.

By an order dated May 11, 1998, the family court entered an "Order for Pre–Decree Re-

---

1. Hawai'i Revised Statutes (HRS) § 580–3(b) (1993) states:

   (b) . . . [I]f the defendant is without the State, the court may authorize the service to be made by any other responsible person, or the court may authorize notice of the pendency of the action and of a time and place of hearing, which shall be not less than twenty days after the giving of personal notice, to be given to the defendant personally by such person and in such manner as the court shall designate and the case may be heard and determined at or after the time specified in the notice.

2. HRS § 580–3(c) states as follows:

   (c) If the defendant is without the circuit, the court may authorize service by registered or certified mail, with request for a return receipt and

direction to deliver to addressee only. The return receipt signed by the defendant shall be prima facie evidence that the defendant accepted delivery of the complaint and summons on the date set forth on the receipt. Actual receipt by the defendant of the complaint and summons sent by registered or certified mail shall be equivalent to personal service on the defendant by an authorized process server as of the date of the receipt.

3. It is not clear to us what authority allows the clerk of the Family Court of the First Circuit to sign orders for service by mail that are entered pursuant to HRS § 580–3(c). While HRS § 580–2 (1993) clearly allows the clerk to sign the summons that will be served with a complaint, we are unaware of any statute or rule authorizing the clerk to order out-of-state service by mail.

lief" that, among other things: (1) temporarily restrained Husband from "threatening, abusing, or harassing" Wife and Son; (2) temporarily prohibited Husband from possessing or controlling any firearm, ammunition, firearm permit, or license; (3) revoked all of Husband's firearm permits and licenses; (4) ordered Husband and Wife to appear for a June 17, 1998 hearing on Wife's motion; and (5) ordered that the Order for Pre-Decree Relief and the documents appended to it "be served on [Husband] by a member of the Lee County, Florida Sheriff's Dept." Pursuant to a May 19, 1998 written order, the family court authorized service of the foregoing documents on Husband "personally" in Florida by "any Sheriff, Deputy Sheriff, Police Officer, Constable or any other officer or adult person authorized under the laws of the State of Florida to effect service of legal process upon [Husband.]"

On June 5, 1998, Wife's attorney filed a Proof of Service, in which he represented that he had caused a certified copy of the "Complaint for Divorce; Summons, Motion and Affidavit for Pre[-]Decree Relief, and Motion for Personal Service Without the State and Affidavit; Order," to be personally served on Husband on May 26, 1998, at 4:35 p.m. However, the attached affidavit of the Lee County deputy sheriff who had effectuated the service revealed that in actuality, "sub service" had been made on Husband's father. In a typewritten statement attached to the affidavit, the deputy sheriff noted that he had served papers on Husband at 16091 Siesta Drive at "435 P.M. on the 26 day of May, A.D., 1998, in Lee County, Florida[,]" by substitute service by leaving a true copy of the complaint and summons "with a member of the household then and there residing above the age of 15 years to wit: [Husband's] father[.]" The deputy sheriff explained the details of the service in his handwriting as follows:

[Husband] on road as a truck driver.

(Stanford Lifsey 813–251–2234, lawyer for [Husband] ) Father refused to accept papers. [Father's w]ife also refused service. Drop served at house with both parties

present. Papers left within arms reach and plain view of father on boat hull in car port by door to house. Contents of papers was [sic] known by father.

The record does not contain any return receipt indicating that service of the relevant documents was made on Husband by registered or certified mail.

**B.**

Husband's first appearance in this case occurred when he filed his Answer to Complaint for Divorce on June 16, 1998. In his answer, Husband denied paragraph 1 of Wife's complaint, which alleged as follows:

Either or both parties have been domiciled or have been physically present in the State of Hawaii for a continuous period of at least six months and [Wife] has been domiciled or has been physically present in this circuit for a continuous period of at least three months immediately preceding this application for divorce.

However, Husband did not raise in his answer the defenses of lack of *in personam* jurisdiction over him, insufficiency of service of process, or lack of subject matter jurisdiction.

On June 17, 1998, a hearing on Wife's Motion for Pre–Decree Relief was held. Husband personally appeared at the hearing, along with one of his attorneys, Emmanuel Guerrero. At the hearing, Husband orally contested the family court's subject matter jurisdiction over this case. As a result, the family court entered an order continuing to June 24, 1998 the hearing on the "instant motion as well as on [Husband's] motion re jurisdiction of court over divorce" and ordered counsel for Husband and Wife to submit memorandum on the "issue of jurisdiction, residency & domicile,[4] as well as overlapping issues relating to [Uniform Child Custody Jurisdiction Act (UCCJA)]."

On June 22, 1998, Husband filed a Motion to Dismiss Complaint for Divorce (first motion to dismiss). In a memorandum in sup-

---

4. Although *Black's Law Dictionary* (6th ed.1990) at 484 spells the word "domicile" with an "e" at the end, numerous cases and articles spell the word without the ending "e." For the sake of uniformity, the word is spelled with the ending "e" throughout this opinion.

port of this motion, Husband argued that the family court lacked jurisdiction over this case because: (1) neither he nor Wife had been domiciled or physically present in the State for a continuous period of at least six months preceding Wife's application for divorce; and (2) neither he nor Wife was domiciled or physically present in the First Circuit for a continuous period of at least three months immediately preceding Wife's application for divorce. Husband also argued that the family court should decline jurisdiction to determine Son's custody under the UCCJA, HRS chapter 583 (1993), because Wife should not be rewarded for forum shopping and child abduction, the Hawai'i forum was inconvenient, and an action to determine custody of Son was already pending in Lee County, Florida.

At the continued hearing on June 24, 1998, both Husband and Wife were present with their attorneys. The following day, the family court entered an order that: (1) awarded Wife temporary legal and physical custody of Son, subject to supervised visitation by Husband while Husband is in Hawai'i; (2) took under advisement the jurisdictional issue raised by Husband; and (3) required Husband to provide the court with the name, address, and phone number of the judge hearing the custody action brought by Husband in Florida.

On July 7, 1998, the family court held a telephone conference with Judge R. Thomas Corbin (Judge Corbin), the presiding judge hearing the Emergency Petition for Immediate Custody of Minor Child that had been filed in Florida by Husband on June 4, 1998, after Husband had received a copy of Wife's complaint for divorce. On July 30, 1998, the family court filed an "Order Re Motion for Pre–Decree Relief Filed on May 11, 1998" (July 30, 1998 Order), in which the family court entered findings of fact, as well as the following relevant conclusions of law:

1. Despite [Wife's] temporary relocation to the State of Florida, [Wife's] "domicile" for purposes of Section 580–1 of the Hawaii Revised Statutes, remained in the State of Hawaii and this Court therefore has exclusive original jurisdiction of divorce proceedings in this matter.

2. Despite the temporary relocation of [Son] to the State of Florida, the State of Hawaii has jurisdiction under Section 583–3(a)(2) of the Hawaii Revised Statutes [5] to make a child custody determination by initial decree as it is in the best interests of [Son] that this State assume jurisdiction because (A) [Son] and [Wife] have a significant connection with this State, and (B) there is available in this State substantial evidence concerning the present or future care and protection of the [Son].

(Footnote added.)

On August 4, 1998, Husband filed a Motion for Reconsideration of the July 30, 1998 Order, challenging the family court's subject matter jurisdiction of the case, and raising, for the first time, the issue that the family court lacked personal jurisdiction over him because he had been improperly served with the divorce complaint. Husband argued, with respect to the latter issue, that Finding of Fact No. 11 of the July 30, 1998 Order, in which the family court found that "[Husband] was served with the Complaint for Divorce/Summons and the Motion for Pre–Decree Relief in Lee County, Florida by way of Sheriff on May 26, 1998[,]" was erroneous.

Husband subsequently filed a Motion to Dismiss for Improper Service on August 17, 1998 (second motion to dismiss). In a supporting memorandum, Husband argued that leaving copies of the divorce complaint within his father's reach did not constitute personal service on Husband, and therefore, the family court did not have personal jurisdiction over Husband and should dismiss the case. The family court denied Husband's Motion to

---

**5.** HRS § 583–3(a)(2) (1993) states:

(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

. . . .

(2) It is in the best interest of the child that a court of this State assume jurisdiction be-

cause (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this State, and (B) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]

Dismiss for Improper Service on August 25, 1998.

### C.

On September 15, 1998, Wife's Motion to Set the divorce case for trial was "received" by the family court. A trial date of December 10, 1998 was filled in on the Motion to Set document, which was then "filed" in the family court on September 16, 1998. On November 4, 1998, Husband's primary attorney moved to withdraw as counsel due to lack of contact with and cooperation by Husband. Husband's co-counsel joined in this motion on November 12, 1998. By an order dated December 4, 1998, the family court granted Husband's co-counsel's motion, but denied in part the motion to withdraw filed by Husband's primary attorney, requiring the latter to "stay on until after" the December 10, 1998 hearing. After Husband failed to appear for the December 10, 1998 trial and also failed to file and serve a required position statement, asset and debt statement, and income and expense statement, the family court granted Wife's oral motion for default and entered an order allowing Husband's primary attorney to withdraw as counsel.

On December 22, 1998, the family court filed a Divorce Decree that, among other things, determined that the court had jurisdiction to enter the decree, awarded sole legal and physical custody of Son to Wife, and ordered Husband to pay $540 per month in child support. Husband filed his Notice of Appeal on January 19, 1999, and on February 24, 1999, the family court entered its Findings of Fact and Conclusions of Law. The Findings of Fact entered by the family court, which Husband has not challenged on appeal, state, in relevant part, as follows:

1. [Husband and Wife] were married on July 3, 1993 in Honolulu, Hawaii.

2. [Husband and Wife] have a minor child, [Son,] born in Hawaii on August 21, 1996.

3. [Husband and Wife] lived in Hawaii for four and one-half years until mid-January, 1998, whereupon they relocated to Lee County, Florida.

4. [Wife] was employed at Health Park Medical Center in Florida from February 19, 1998 until May 3, 1998.

5. Both [Wife] and [Husband] registered to vote in Florida within two months of their arrival in that jurisdiction.

6. [Husband and Wife] kept a joint bank account in the State of Hawaii during the nearly four month period of [Wife's] residency in the State of Florida.

7. [Wife] kept a federal credit union account in the State of Hawaii during her nearly four month residency in Florida.

8. [Wife] intends to reside in the State of Hawaii permanently.

9. [Wife] filed a *Complaint for Divorce* with this Court on May 8, 1998 and a *Motion and Affidavit for Pre–Decree Relief* on May 11, 1998.

10. [Husband] testified in a Florida hearing that he thought [Wife's] actions in returning to Hawaii were "premeditated" and that he believed that [Wife] never intended to stay in Florida and always intended to return to Hawaii. . . .

11. [Wife's] leaving Hawaii in mid-January, 1998 was under the duress of [Husband].

12. Hawaii was the state in which [Son], immediately preceding the time involved, lived with his parents for at least six consecutive months.

13. [Son] has significant and substantial medical records in the State of Hawaii.

14. [Wife] returned to Hawaii with [Son] on May 6, 1998.

15. [Husband] was served with the Complaint for Divorce/Summons and the Motion for Pre–Decree Relief in Lee County, Florida by way of Sheriff on May 26, 1998.

16. [Husband] filed an Emergency Petition for Immediate Custody of [Son]/Summons in Lee County, Florida on June 4, 1998.

17. Judge Loralyn Cramer contacted Judge R. Thomas Corbin, Division A, of the Lee County Justice Center in Fort Myers [sic], Florida on July 7, 1998 who, after hearing the opinion of this Court on matters of jurisdiction, related that a hear-

ing is scheduled on [Husband's] Emergency Petition for Immediate Custody of [Son] on July 22, 1998 at 9:00 a.m. in Lee County, Florida. Judge Corbin further related that [Wife] and her Hawaii lawyer may appear at the July 22, 1998 hearing by telephone. Judge Corbin will subsequently rule on [Husband's] Emergency Petition for Immediate Custody of [Son].

18. [Husband's] *Motion for Reconsideration* was filed more than 20 days from the announcement of the decision upon which it was based.

The Conclusions of Law entered by the family court that are pertinent to this appeal state as follows:

1. Despite [Wife's] temporary relocation to the State of Florida, [Wife's] "domicile" for purposes of § 580–1 of the Hawaii Revised Statutes, remained in the State of Hawaii and this Court therefore has exclusive original jurisdiction of divorce proceedings in this matter.

2. Where [Wife] had a job, a home, a family and financial obligations in this state, there is sufficient evidence to show that she was domiciled in Hawaii prior to her removal to another jurisdiction. Since there was insufficient evidence to rebut that presumption of continued domicile in Hawaii, she was deemed a domiciliary of this state. See *Arakaki v. Arakaki*, 54 Haw. 60, 502 P.2d 380 (1972), rehearing denied, 54 Haw. 298 (1973).

3. The domicile of origin or a domicile once established is presumed to continue, and one alleging that a change has taken place has the burden of proof. See *Blackburn v. Blackburn*, 41 Haw. 37, rehearing denied 41 Haw. 650 (1955) at 654, and *Arakaki, supra* at 65, 502 P.2d 380.

4. "Home state" is defined where the child has lived for his or her last six months (including temporary absences) immediately preceding the filing of an action involving custody. HRS § 583–2(5)[.]

5. The home state retains jurisdiction for up to six months after the child's removal or departure from the state. HRS § [583–3(a)(1)(B).] See *Allen v[.] Allen*, 2 Haw.App. 519, 634 P.2d 609 ([1981]) rev'd 64 Haw. 553, 645 P.2d 300 (1982).

6. The Parental [K]idnapping Prevention Act ("PKPA") also gives priority to the home state. See 28 USC 1738A(c)(1)(2) as well as to the state that has significant connections to [Son].

7. Hawaii is [Son's] "home state" as defined in HRS § 583–2(5).

8. Initial jurisdiction to render a child custody order exists in Hawaii only, [Son's] "home state" pursuant to § 583–3(a)(1)(A).

9. Despite the temporary relocation of [Son], to the State of Florida, the State of Hawaii also has Jurisdiction under § 583–3(a)(2) of the Hawaii Revised Statutes to make a child custody determination by initial decree as it is in the best interests of [Son], that this State assume jurisdiction because (A) [Son] and [Wife] have a significant connection with this State, and (B) there is available in this State substantial evidence concerning the present or future care and protection of [Son].

10. [Son's] "home state" is Hawaii.

## STANDARD OF REVIEW

■ The question of whether a court has jurisdiction over a case is a question of law which we review under the right/wrong standard. *State v. Ontiveros*, 82 Hawai'i 446, 448, 923 P.2d 388, 390 (1996).

## DISCUSSION

A. *Whether the Family Court Had Personal Jurisdiction Over Husband*

■ It is undisputed that Husband was never personally served in Florida with the Complaint for Divorce, Summons, and Motion for Pre–Decree Relief. The Florida deputy sheriff who filed the return of service admitted that after both of Husband's parents had refused to accept service on Husband's behalf, he left the foregoing documents outside the door of the house where Husband was living with his parents. In light of these facts, Husband argues that the family court erred in ruling that it had appropriately acquired jurisdiction over him because substitute service is not authorized by

Hawaiʻi Family Court Rules (HFCR) Rule 4(d)(1) and (e)(1).

### 1.

■ At the time of the proceedings below, HFCR Rule 4 [6] expressly required, in relevant part, as follows:

**(d) Personal Service.** Service shall be made as follows:

6. Hawaiʻi Family Court Rules (HFCR) Rule 4 has been amended, effective January 1, 2000, to read as follows:

(a) **Summons: Issuance.** Upon the filing of the complaint, the clerk shall forthwith issue a summons and deliver it to the plaintiff for service by a person authorized to serve process. Upon request of the plaintiff, separate or additional summons shall issue against any defendant.

(b) **Summons: Form.** The summons shall
(1) be signed by the clerk under the seal of the court,
(2) contain the name of the court, the names of the parties, and the date when issued[,]
(3) be directed to the defendant or cross-defendant,
(4) state the name and address of the plaintiff's attorney, if any, otherwise the plaintiff's address,
(5) state the time within which these rules require the defendant or cross-defendant to appear and defend, and shall notify the defendant or cross-defendant that in case of the defendant's or cross-defendant's failure to do so judgment by default will be rendered against the defendant or cross-defendant for the relief demanded in the complaint,
(6) contain a prohibition against personal delivery of the summons between 10:00 p.m. and 6:00 a.m. on premises not open to the public, unless a judge of the family or circuit courts permits, in writing on the summons, personal delivery during those hours, and
(7) contain a warning to the person summoned that failure to obey the summons may result in an entry of default and default judgment.
When, under Rule 4(e), service is made pursuant to a statute or rule of court, the summons or notice, or order in lieu of summons, shall correspond as nearly as may be to that required by the statute or rule.

(c) **Summons: By Whom Served.** Service shall be made: (1) anywhere in the State by the sheriff or the sheriff's deputy, by some other person specially appointed by the court for that purpose, or by any person who is not a party and is not less than 18 years of age; or (2) in any county by the chief of police of that county or the chief's duly authorized subordinate. Subpoena, however, may be served as provided in Rule 45.

(1) Upon the individual to whom process is directed, by delivering a copy of the pleading and process to him personally.

(A) In actions to establish or modify the amount of child support owed, or to enforce an existing order of child support, if the individual to whom process is directed cannot be found, service may be made by leaving copies of the pleading and process

(d) **Summons: Personal Service.** The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:
(1) Upon an individual other than a child or an incompetent person,
(A) by delivering a copy of the summons and of the complaint to the individual personally or in case the individual cannot be found by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or
(B) by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.
. . . .
(9) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute.

(e) **Summons: Other Service.** Whenever a statute or an order of court provides for service upon a party not an inhabitant of or found within the State of a summons, or of a notice, or of an order in lieu of summons, service shall be made under the circumstances and in the manner prescribed by the statute or order. Whenever a statute or an order of court requires or permits service by publication of a summons, or of a notice, or of an order in lieu of summons, any publication pursuant thereto shall be made under the circumstances and in the manner prescribed by the statute or order.

(f) **Territorial Limits of Effective Service.** All process may be served anywhere within the State and, when a statute or order so provides, beyond the limits of the State.

(g) **Return.** The person serving the process shall make proof of service thereof to the court promptly and in any event within the time during which the person served must respond to process. When service is made by any person specially appointed by the court, that person shall make affidavit of such service.

(h) **Amendment.** At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.

. . . .

**(e) Other Service.** *Whenever a statute or an order of court provides for service upon a party not an inhabitant of or found within the circuit or the State,* and the facts shall appear by affidavit to the satisfaction of the court, *service shall be made in the following manner:*

(1) *Personal Service. By delivering a certified copy of the pleading and process personally to the individual under the circumstances and in the manner prescribed by the statute or order.*

(2) *Mail. By forwarding a certified copy of the pleading and process to the individual by registered or certified mail, with return receipt requested and a direction to deliver to addressee only.*

. . . .

**(f) Territorial Limits of Effective Service.** Subject to HRS section 517–8.5(3),[7] as amended, *all process may be served* anywhere within the State and, *when a statute or order so provides, beyond the limits of the State.*

**(g) Proof of Service.** Proof of service of process shall be made to the court promptly, at least 24 hours prior to the date of the hearing, unless excused by the court for good cause, and in any event within the time during which the person served must respond to process. Such proof shall be as follows:

. . . .

(5) *A complaint for divorce … shall not be heard until proof of personal service of certified copies of the complaint or cross-complaint and summons, of service by registered or certified mail or of service by publication, or an appearance and waiver duly signed by the defendant or cross-defendant, shall have been filed* prior to the hearing. Actual receipt by the defendant or cross-defendant of the complaint or cross-complaint and summons sent by registered or certified mail may be proved by a document in writing and shall be equivalent to personal service by an authorized process server as of the date of the receipt.

(Emphases and footnote added.) We agree with Husband that pursuant to the foregoing rule, service of a complaint for divorce upon an out-of-state defendant must be made personally [8] on the defendant. Service by leaving copies of a divorce complaint with some person of suitable age and maturity at the individual defendant's dwelling or usual place of abode, i.e., abode service, is not allowed for divorce actions. However, the foregoing rule does authorize abode service of a complaint to establish, modify, or enforce a child support order.

In this case, Wife's complaint requested that Wife be granted a divorce from Husband and also that Husband be ordered to provide child support for Son. Arguably then, Husband could have been served by abode service, at least with respect to the child support portion of the complaint, but not as to the portion of the complaint seeking divorce.

7.   The reference to HRS § 517–8.5(3) appears to have been a typographical error, since our research has failed to reveal the existence of any such statutory provision. The correct reference in all probability was HRS § 571–8.5(3), which refers to the power of district family judges to "[m]ake and issue all orders and writs necessary or appropriate in aid of their original jurisdiction[.]"

8.   In *Paul v. Paul*, 9 Haw.App. 176, 830 P.2d 1158 (1992), this court recognized the difference that exists between HFCR Rule 4(d)(1) and Hawai'i Rules of Civil Procedure (HRCP) Rule 4(d)(1) regarding personal service. We noted that

HRCP Rule 4(d)(1) allows personal service upon an individual to be accomplished in the following ways: (A) by delivering a copy to the individual personally; or (B) if the individual cannot be found, by leaving copies thereof at his dwelling or usual place of abode with some person of suitable age and discretion then residing therein; or (C) by delivering a copy to an agent authorized (1) by appointment or (2) by law to receive service. In contrast, HFCR Rule 4(d)(1) allows personal service to be made only by delivering a copy to the individual personally.

*Id.* at 181–82, 830 P.2d at 1161.

2.

Regarding the divorce component of the complaint, the record reveals that even if Husband were improperly served with the complaint, he waived the improper service issue by not raising it until after he had filed an answer, personally appeared at a hearing on Wife's Motion for Pre–Decree Relief, and filed his first motion to dismiss. At the time of the proceedings below, HFCR Rule 12,[9] entitled "Defenses and Objections by Pleading or Motion—When and How Presented—Preliminary Hearings," required, in relevant part, as follows:

**(b) How Presented.** *Every defense, in law or fact,* to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, *shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person, ... (5) insufficiency of service of process .... A motion making any of these defenses shall be made before pleading if a further pleading is permitted.* No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. . . .

. . . .

**(g) Consolidation of Defenses in Motion.** A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion

---

9. Effective January 1, 2000, HFCR Rule 12 was amended, in relevant part, to read as follows:

**Rule 12. DEFENSES AND OBJEC-TIONS—WHEN AND HOW PRESENTED—BY PLEADING OR MOTION—[WHEN AND HOW PRESENTED—PRELIMINARY HEARINGS] MOTION FOR JUDGMENT ON THE PLEADINGS.**

. . . .

**(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, [and] (6) failure to state a claim upon which relief can be granted, and (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, [he] the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, [O]on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading [may be] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. [The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the date of hearing may serve opposing affidavits or memoranda, subject to possible exclusion of the affidavits as raising matters outside the pleading.]

. . . .

**(g) Consolidation of Defenses in Motion.** A party who makes a motion under this rule may join with it any other motions herein provided for and then available to [him] the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to [him] the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

**(h) Waiver or Preservation of Certain Defenses.**

(1) [(Reserved)] A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

(2) A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

(3) Whenever it appears by motion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court [may] shall dismiss the action.

(Deleted language bracketed; new language underscored.)

under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

**(h) Waiver or Preservation of Certain Defenses.**

(1) (Reserved)

(2) A defense of failure to state a claim upon which relief can be granted, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or at the trial on the merits.

(3) Whenever it appears by motion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

(Emphases added.)

HFCR Rule 12(g), as it existed at the time of the trial below, was identical to Hawai'i Rules of Civil Procedure (HRCP) Rule 12(g), as it then existed.[10] In analyzing HRCP Rule 12(g), the Hawai'i Supreme Court held in *Roxas v. Marcos*, 89 Hawai'i 91, 135, 969 P.2d 1209, 1253 (1998), that "notwithstanding that the defense of lack of personal jurisdiction was asserted in the Marcoses' answer to the plaintiffs-appellees' complaint, ... the Marcoses' failure to assert it in their motion to dismiss constitutes a waiver of the issue pursuant to HRCP Rule 12(g) and (h)."[11]

In this case, the first responsive pleading that Husband filed was his Answer to Complaint, filed on June 16, 1998. Nowhere in this pleading did Husband raise the defenses of lack of jurisdiction over the person or insufficiency of service of process. Furthermore, although HFCR Rule 12(b) allowed Husband to assert the defense of "insuffi-

ciency of service of process" by way of motion made before pleading, Husband did not assert this defense until approximately two months after filing his answer, over a month after filing his first motion to dismiss, and after personally appearing in court at a hearing on Wife's Motion for Pre-Decree Relief. Since the insufficiency of service of process defense did not fall within any of the exceptions set forth in HFCR Rule 12(h)(2), Husband's failure to assert the defense in his first pleading, his answer, and his first motion to dismiss precluded him from raising the defense. HFCR Rule 12(g). Accordingly, Husband waived this defense.

B. *Whether the Family Court Had Subject Matter Jurisdiction to Enter a Divorce Decree in This Case*

▆▆▆ It is well settled as a general proposition that a divorce decree entered in a state in which neither of the parties has a domicil[e] at the time the suit is commenced is void for lack of jurisdiction, both in the state in which it was entered and in any other state, and is not entitled to full faith and credit. Hence, as a proposition of general law, it is a prerequisite to the validity of a divorce decree that at least one of the parties to the suit is domiciled in the state awarding the decree.

While the actual length of time during which a person stays at a certain place may be one of the factors to be considered in determining whether such person acquired domicil[e] at such place, no definite period of time is necessary to create a domicil[e], and one day is sufficient provided the other prerequisites of establishing a domicil[e] are met.

Annot., *Length or Duration of Domicil[e], as Distinguished from Fact of Domicil[e], as a Jurisdictional Matter in Divorce Action,* 2

---

**10.** HRCP Rule 12(g), like the counterpart HFCR Rule 12(g), were both amended, effective January 1, 2000, to make the rules gender neutral.

**11.** At the time *Roxas v. Marcos*, 89 Hawai'i 91, 969 P.2d, 1209 (1998) was decided, HRCP Rule 12(h) provided, as it does now, in relevant part, as follows:

**(h) Waiver or Preservation of Certain Defenses.**

(1) A defense of lack of jurisdiction over the person, ... or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

A.L.R.2d 291, § 1 at 292 (1948) (footnotes omitted). *See also Whitehead v. Whitehead,* 53 Haw. 302, 307–08, 492 P.2d 939, 943 (1972) (holding that "divorce is a matter within the control of the states ... [b]ut, for a state to exercise its control, it must have jurisdiction over the matter. It has jurisdiction when one of the parties to the action is domiciled therein. A person establishes his domicile in a state by being physically present there with the intention of remaining indefinitely. For that purpose, no particular length of stay is necessary. Even a day will suffice." (Citation omitted)).

█ However, nearly all states require, as a condition of the right to sue for divorce, that at least one of the parties to the divorce action be a resident or domiciliary of the state in which the action is brought for a specified period. 1 H. Clark, *The Law of Domestic Relations in the United States* (hereafter, *The Law of Domestic Relations* ) § 13.2, at 703 (2d.ed.1987). In Hawai‘i, for example, HRS § 580–1 (1993) specifically requires that an applicant for divorce be domiciled or physically present in the State for at least six months in order to qualify for a divorce:

> **Jurisdiction; hearing.** Exclusive original jurisdiction in matters of ... divorce, ... subject to section 603–37 as to change of venue, and subject also to appeal according to law, is conferred upon the family court of the circuit in which the applicant has been domiciled or has been physically present for a continuous period of at least three months next preceding the application therefor. *No absolute divorce from the bond of matrimony shall be granted for any cause unless either party to the marriage has been domiciled or has been physically present in the State for a continuous period of at least six months next preceding the application therefor.* A person who may be residing on any military or federal base, installation, or reservation within the State or who may be present in the State under military orders shall not thereby be prohibited from meeting the requirements of this section.

(Emphasis added.)

Husband contends that the divorce decree entered by the family court is null and void because neither he nor Wife had been "domiciled or physically present in the State for a continuous period of at least six months" or "domiciled or physically present in the [First] Circuit for a continuous period [of] at least three months immediately preceding the Application for Divorce," filed on May 8, 1998, and therefore, the family court lacked subject matter jurisdiction to enter the divorce decree.[12] For the following reasons, we disagree.

1.

Courts across the country have taken divergent views on the issue of whether statutes such as HRS § 580–1, which impose a durational domicile or residence requirement for divorce, must be complied with at the time the divorce complaint is filed in order to give a court jurisdiction over the subject matter of the divorce. *The Law of Domestic Relations* § 13.2, at 704. Some courts have held that such a statutory requirement "is jurisdictional in the sense that failure to comply therewith renders a divorce decree absolutely void, even though the plaintiff, at the time he [or she] commenced the divorce suit, had a bona fide domicil[e] in the state in which the divorce was granted." *See* Annot., 2 A.L.R.2d § 6, at 298. Other courts have taken the view that as long as the plaintiff to the divorce suit had a bona fide domicile in the state in which the divorce decree was granted, "the statutory requirement of length of domicil[e] or residence as a prerequisite to granting a divorce is not jurisdic-

---

12. In response to Husband's contention, Wife maintains that the "continuous six-month period" mentioned in HRS § 580–1 does not apply to those who are domiciled in Hawai‘i. In *Whitehead v. Whitehead,* 53 Haw. 302, 492 P.2d 939 (1972), however, the Hawai‘i Supreme Court stated that "Hawaii is not alone in denying divorce to an applicant who has not been domiciled or has not been physically present in the state for a prescribed period before bringing the divorce action[,]" *id.* at 305, 492 P.2d at 941, and that "states are justified in requiring an objective test of the establishment of domicile, such as is provided in [the] residential requirement for divorce[.]" *Id.* at 308, 492 P.2d at 943. It is clear then that the durational six-month period applies to both domicile and physical presence.

tional in the sense that failure to comply therewith renders a divorce decree absolutely void[.]" *Id.* § 3, at 294.

Hawai'i follows the second approach. In *Whitehead*, the Hawai'i Supreme Court held that the six-month domiciliary or physical presence requirement for divorce in the second sentence of HRS § 580–1 is jurisdictional in the sense that a court cannot enter a divorce decree in the absence of proof of domicile for the necessary length of time. 53 Haw. at 315, 492 P.2d at 947. However, the requirement does not deprive the family court of subject matter jurisdiction to hear and act on a case:

> The second sentence of § 580–1 provides that "no divorce * * * shall be granted" unless either party to the marriage has satisfied the durational residential requirement stated therein. It does not say that the court shall not hear a divorce case in which the requirement has not been met.

> The plain meaning of the language of the second sentence of § 580–1 is that satisfaction of the residential requirement is a condition to the granting of divorce by the court which has heard the case, not a condition which deprives a divorce applicant of a forum in which his case may be heard.

> This court has held that the residential requirement for divorce in our statutes is jurisdictional. *Zumwalt v. Zumwalt,* 23 Haw. 376 (1916); *West v. West,* 35 Haw. 461 (1940); *Anderson v. Anderson,* [38 Haw. 261 (1948)]. The word "jurisdictional", as used in that connection, does not have reference to the jurisdiction of a court to hear and act on a case; rather, it refers to the jurisdiction which every state must have over the marriage relationship as a prerequisite to exercising its control over divorce. This is evident from the statement in *Zumwalt v. Zumwalt, supra,* 380, that "the circuit judge was without authority to grant the decree in the absence of proof of domicil[e] for the necessary length of time." The statement is not that the circuit judge was without authority to hear the case in the absence of the required proof of domicile.

> The second sentence of § 580–1 is a provision which sets forth a substantive requirement for divorce. In this respect, it is similar to § 580–41, which sets forth grounds for divorce. An applicant for divorce who fails to prove a ground for divorce will not be granted a divorce because of failure to satisfy a substantive requirement for divorce. Similarly, an applicant who fails to prove that he [or she] has been domiciled or has been physically present in this State for one year will not be able to obtain a divorce because of failure to satisfy a substantive requirement, not because he [or she] is denied access to court.

*Id.* at 315–16, 492 P.2d at 946–47.

In this case, Husband does not contest that Wife was domiciled in Hawai'i at the time she filed for divorce on May 8, 1998. His contention is that the family court lacked subject matter jurisdiction to entertain this case because Wife had not been domiciled in Hawai'i for a continuous period of six months and in the First Circuit for a continuous period of three months prior to the filing of her divorce complaint. In light of *Whitehead,* however, as long as Wife was domiciled in Hawai'i at the time she filed for divorce, i.e., she was physically present in Hawai'i with the intention of remaining indefinitely, the family court had subject matter jurisdiction to entertain the action. Having subject matter jurisdiction over the case, the family court was then authorized to grant the divorce decree dissolving the marriage between Husband and Wife as long as Wife had been domiciled in Hawai'i for a continuous period of six months prior to the entry of the divorce decree on December 22, 1998. Since the divorce decree was entered more than six months after the complaint was filed on May 8, 1998, the substantive requirements for the entry of the decree appear to be met.

The Hawai'i Supreme Court has stated that "[t]o acquire a new domicile there must be residence or bodily presence in the new location and an intent to remain. Act and intent must concur and there must be an intention to abandon the old domicile." *Blackburn v. Blackburn,* 41 Haw. 37, 40. (1955). Additionally, "[t]he domicile of origin or a domicile once established is presumed to

continue and one alleging that a change has taken place has the burden of proof." *Id.* at 41.

In this case, the family court determined that "[d]espite [Wife's] temporary relocation to the State of Florida, Wife's 'domicile' . . . remained in the State of Hawaii" and therefore, the family court had "exclusive original jurisdiction of divorce proceedings in this matter." Husband contends that the family court "incorrectly ruled[ ] that the items relied upon by [Wife] establish only a Temporary relocation to State of Florida and that she has been continuously domiciled for purposes of [HRS §] 580–1 in the State of Hawaii[.]"

However, Husband failed to challenge any of the Findings of Fact that formed the bases for the family court's conclusion that Wife met the durational domiciliary requirements of HRS § 580–1. Husband is therefore bound by such findings and any conclusions of law that follow from such findings. *Taylor-Rice v. State*, 91 Hawai'i 60, 65, 979 P.2d 1086, 1091 (1999).

In light of the family court's unchallenged findings of fact, we cannot conclude that the family court was incorrect when it determined that Wife had established domicile in Hawai'i for the continuous six-month period and in the First Circuit for the continuous three-month period designated by HRS § 580–1 and had not abandoned such domicile when she spent four months in Florida with Husband and Son.

## CONCLUSION

For the above stated reasons, we affirm the December 22, 1998 Divorce Decree entered by the family court, as well as the supporting Findings of Fact and Conclusions of Law.